McCOMBS v. WALL.

Opinion delivered April 8, 1899.

1. ADJACENT PROPRIETORS—AGREEMENT TO FIX BOUNDARIES.—Under an agreement between two adjacent proprietors to the effect that they would meet on a certain day, and run off the boundary line, and establish same between their respective lands, "each agreeing to abide by the line as established by the surveyor, and according to our deeds," neither party was bound by any line established by the surveyor not in accordance with their deeds. (Page 343.)

2. FORMER ADJUDICATION—CONCLUSIVENESS.—To render a judgment in one suit conclusive of a matter sought to be litigated in another, it must appear, by the record or by extrinsic evidence, that the particular matter sought to be concluded was raised and determined in the prior suit. (Page 343.)

Appeal from Ashley Circuit Court.

MARCUS L. HAWKINS, Judge.

*Robt. E. Craig*, for appellant.

The previous suit in chancery, involving the same matters as arise in this action, renders them *res adjudicatae* (2 Black, Judg. §§ 505, 549, 609), and not open to collateral attack. 1 Black, Judg. 193, 194. Limitation was suspended during the pendency of that case. 7 Am. St. Rep. 679. The court erred in refusing to instruct the jury that one employed to do all acts connected with a certain subject-matter was, as to such, a general agent. 13 Am. St. Rep. 204; Story, Ag. § 17; Laws. Cont. 169; 1 Am. & Eng. Enc. Law, 348. The court erred, also, in refusing to give instructions 4 and 6 asked by appellant. No greater formality is required in authorizing an agent to do an act than would be required for the master himself to do it. 1 Laws. Rights & Rem. 10 and 11; Laws. Cont. 169; 55 Am. Dec. 330; 17 Am. Dec. 53. Oral partition, followed

by possession, is not within the statutes of frauds.   27 Am. St.
Rep. 870; 17 Am. St. Rep. 549; 39 *id.* 154 and note; 10 *id.*
745; 66 Am. Dec. 581.

*J. G. Williamson*, for appellee.

The seven-year statute of limitations gives such title as
will support ejectment.   34 Ark. 534; 38 Ark. 181; 48 Ark.
312; 49 Ark. 266; 50 Ark. 68.   Fencing and cultivation of
part of what is so fenced was sufficient adverse possession of
all.   Angell, Lim. § 383, p. 387.   Limitation ran in favor of
appellee until she was made a party to the chancery suit.   17
Ark. 608; 64 Ark. 345; Angell, Lim. § 390; 47 Ark. 120; 62
Ark. 401.   Prior to the act of February 16, 1893, a married
woman's power of attorney was void or voidable.   Sand. & H.
Dig. § 4941; 15 Ark. 237; *ib.* 480; 24 Ark. 264; 30 Ark. 612;
36 Ark. 217.   Until the act of March 19, 1895, a married
woman was not bound by her executory contract.   Acts 1895,
p. 58; 30 Ark. 385; *ib.* 612; 44 Ark. 112; 53 Ark. 309.   Her
contracts must be for the *benefit* of her separate estate.   48
Ark. 220; 33 Ark. 265; 35 Ark. 365; 39 Ark. 238.   The
issues in the chancery suit were not the same as in this,
and hence there is no estoppel.   2 Black, Judg. 609; 53 Ark.
307; 55 Ark. 286; 17 Ark. 203.

BATTLE, J.   On the 13th day of November, 1895, Mrs.
J. A Wall instituted an action against W. F. McCombs to re-
cover possession of a certain part of the south half of the
northeast quarter of section nine in township fourteen south,
and in range four west.   She stated in her complaint that
Wiley J. Cammack, being seized and possessed of the land,
bargained, sold and delivered it to J. E. Ketchens, on the 27th
of November, 1873, and on the same day undertook to convey
it to Ketchens by deed, but failed to describe it correctly;
that Ketchens took possession of it on the same day, and held
actual, adverse, continuous, peaceable, open, notorious, and un-
interrupted possession thereof from that time until on or about
the first day of July, 1879, when he departed this life, intes-
tate, leaving her (the plaintiff) his only heir at law; that
upon the death of Ketchens, her father, she took possession

of the land, and held actual, peaceable, uninterrupted, continuous, adverse, open, and notorious possession thereof until sometime in January, 1895, when the defendant unlawfully ousted her, and took possession of the same. The land is described in the deed executed by Cammack to Ketchens as follows: "A certain tract of land situated and lying in the county of Ashley, state of Arkansas, bounded and described as follows, to-wit: Lying on the southwest side of the public road known as the 'Hamburg and Grand Lake Road,' and northwest of lane, northern part of the northeast quarter of section nine (9), and corners in section ten, taking one and a half acres, more or less, in township seventeen, range four west, containing ninety acres, more or less."

The defendant answered, and averred that he was the owner of the land sued for and entitled to the possession of the same. He alleged that W. J. Cammack conveyed the land to him on the 30th of October, 1890; that the land was laid off and set apart to him by commissioners appointed by the Ashley circuit court; that he and his predecessors in the title had held open, continuous, adverse, notorious and peaceable possession of the same for more than twenty years; and that he and plaintiff, by her husband and agent, entered into a written agreement, on the 15th of November, 1894, to meet on said land in January, 1895, and cause the division lines between them to be "run off" and established by a competent surveyor, which they did, and agreed that the lines so established should be and remain the division lines between their lands, and they then and there, each with the consent of the other, took possession of their respective land up to the line so established, and have so held ever since.

The land in controversy was described in the deed executed by Cammack to McCombs as the "south part of the northeast quarter of section nine," in township seventeen south, and in range four west. Other lands were conveyed by the same deed, and all the real estate conveyed was described as containing three hundred and ten acres, and being the same lands which the Ashley circuit court ordered to be divided between Wiley J. Cammack and Rosamond Sherrer by decree rendered on the 21st day of April, 1888, in an action wherein A. W. Cammack and

Rosamond Sherrer were plaintiffs, and Wiley J. Cammack and others were defendants.

The agreement mentioned in the answer was as follows:

"Portland, Ark., November 15, 1894.

Know all persons that we, J. E. Wall and W. F. McCombs, have this day agreed to meet at Portland, Ark., between the 1st and 10th of January, 1895, and run off the lines and establish same between us in sections 9 and 10, township 17 south, range 4 west; each agreeing to abide by the line as established by the surveyor and according to our deeds.

[Signed]                           W. F. McCombs.

                                   J. E. Wall."

After filing his answer, the defendant amended it, and alleged that, while the deed executed by Wiley J. Cammack to J. E. Ketchens purported to convey the land mentioned in the pleadings, the grantor therein had no title to convey; that a suit was instituted on the 21st day of December, 1881, by A. W. Cammack, and other heirs of Lewis Cammack, deceased, in the Ashley circuit court, against Wiley J. Cammack and others; that it was alleged in the complaint in that action that Wiley J. Cammack acquired and held the lands in controversy in this action, and other lands described, under conveyances executed to him, in trust for the heirs of Lewis Cammack, deceased; that Amy J. Ketchens was a daughter of Lewis Cammack; that Amy J. had died intestate, leaving Mrs. J. A. Wall, the plaintiff in this action, who was her daughter, her heir at law; that Mrs. Wall was an heir of Lewis Cammack, in right of her mother, and was a party to the action instituted by A. W. Cammack and others as before stated; that a decree was rendered in the latter action, by which it was adjudged that Wiley J. Cammack had no title to the land which he undertook to convey to J. E. Ketchens in 1873, but that Amy J. Ketchens was entitled to a distributive share in the estate of Lewis Cammack, deceased, and that Mrs. Wall, as her heir, was entitled to the same; that the court assigned to Mrs. Wall, by said decree, "that part of the northeast quarter of section nine in township seventeen south, and in range four west, lying southwest of the Hamburg and Grand Lake road (a portion thereof being in section ten south and east of said road) and northwest of the

lane, and one and a half acres in the southwest quarter of section ten, and containing ninety acres of land;" and that commissioners were appointed by said decree, who proceeded under the orders of the court and set apart to Wiley J. Cammack the south half of the northeast quarter of section nine, in township seventeen south, and in range four west, the land in controversy, which he, Wiley J. Cammack, afterwards conveyed to McCombs, the defendant in this cause.

Plaintiff, Mrs. Wall, recovered in this action 14.52 acres of the land in controversy.

Evidence was adduced in the trial of this cause tending to prove that plaintiff and her father, under whom she claims, held open, actual, continuous, and adverse possession of the land recovered for more than seven years before she was made a party to the action instituted by A. W. Cammack and others, or was dispossessed by the defendant, McCombs. The deeds under which each party, respectively, claimed were undisputed. Evidence was adduced by the defendant to show that J. E. Wall, the husband of the plaintiff, acted as general agent in the control and management of her lands and business, and that he entered into the written agreement with McCombs to establish lines, as alleged in the answer, and that they met at the time appointed, and a surveyor, acting under the agreement, established divisional lines, and McCombs took possession accordingly, and thereby dispossessed the plaintiff of the land recovered in this action. The defendant also introduced in evidence certified copies of the orders and decree in the action instituted in the Ashley circuit court, on the 21st day of December, 1881, by A. W. Cammack and others, but failed to introduce as evidence any part of the pleadings or depositions therein, or copies of the same. In this copy it appears that Alice Ketchens, so called in the decree, who is now Mrs. Wall, was made a party to that action some time in August, 1886, and that a decree was rendered therein, the material part of which is in the words and figures following:

"It appearing to the court that all of said defendants had been duly and in due time served with process herein, and all of said parties being represented before the court by counsel, the court, after hearing the pleadings and proof and the argu-

ment of counsel, doth find  *  *  *  that all the property in controversy in this action, except the east half of the northwest quarter of section ten, township seventeen south, range four west, was purchased with the money raised by hypothecating the said property; that the same was in equity the money of said deceased, Lewis Cammack,  *  *  *  and that the said Wiley J. Cammack has held the same as trustee since his father's death, May 8, 1868.  *  *  *  It is therefore ordered, considered and adjudged and decreed,  *  *  *  that the northwest quarter of section eleven, township seventeen south, range four west, vest in the said Mary J. Rucker, and in her heirs, in fee simple.  And that the northern part of the northeast quarter of section nine, and a corner of section ten, taking one and one half acres in said township and range, and containing ninety acres, and all lying on the southwest side of the public road known as the 'Hamburg and Grand Lake Road,' and north and west of lane, vest in Alice Ketchens, and her heirs in fee simple.  It appearing to the court that the said Alice is the sole heir of her said sister, Willie, who has departed this life since the commencement of this suit, and  *  *  *  that the remainder of said lands involved in this suit, which were of the estate of Lewis Cammack, to-wit, northeast quarter and west half of northwest quarter of section ten, less one and one-half acres deeded to Ketchens, and south part of the northeast quarter of section nine, township seventeen south, range four west, containing in all 310 acres,  *  *  *  be equally divided, share and share alike, between Wiley J. Cammack and Rosamond Sherrer."

No division of land was ordered to be made, except between Wiley J. Cammack and Rosamond Sherrer.

The defendant, W. F. McCombs, asked and the court refused to give the jury in this action the following instructions:

"First.  In determining whether or not J. E. Wall was a general agent of plaintiff, and by her held out to the world as such, in regard to the management, control and disposition of her lands in sections 9 and 10, township 17 south, range 4 west, you may take into consideration the relation of the parties, all the acts, doings, renting, collecting, leasing, improving, trading, contracting to sell, and all other things known to the

public, done by him to and about said property for the plaintiff; and if you believe, from all these, he was her general agent to and about said property, then, as such, he would have the authority to make and execute the agreement of November 15, 1894, and plaintiff would be bound by it."

"Second. If you believe from the evidence that J. E. Wall entered into a written contract November 15, 1894, with W. F. McCombs to meet at Portland in January, 1895, and run off and establish the line, and abide by the line so established between the property of plaintiff and defendant, and further believe from the evidence that J. E. Wall and McCombs did meet as agreed, run off, establish, and agree on said line, as the division line between said properties, and each took possession up to said line, then the plaintiff is bound by the acts of said J. E. Wall, if he was her general agent to attend to said property and acting within the scope of authority which she held him out to the world to possess."

"Third. If the jury believe from the evidence in this case that the northeast quarter of section nine was involved in the suit between A. W. Cammack et al. *v.* W. J. Cammack et al., and in said suit it was decided that the land did not belong to W. J. Cammack, but that he held the same in trust for plaintiff's mother and others, then limitation was suspended from the time of the institution of said suit as to said land until the appeal to the supreme court in said cause was dismissed.

"Fourth. The court instructs the jury that where under a deed 80 or 90 or other numbers of acres are called for in the northern part of a section or quarter section, then the same will be laid off by running the line parallel with the northern boundary of said section or quarter section, and sufficiently far from the northern boundary to include the number of acres called for."

According to this statement of the evidence Mrs. Wall acquired title to the 14.52 acres recovered by her by seven years' adverse possession, and is entitled to hold the same, if she has not lost the right to do so by the agreement to establish boundary lines which was entered into by her husband and McCombs on the 15th day of November, 1894, or by the

decree rendered in the action instituted in the Ashley circuit court on the 21st day of December, 1881.

Did she lose it by virtue of the agreement between her husband and McCombs? This agreement was not to establish the boundary lines between the adjoining lands of Mrs. Wall and McCombs, but between the land acquired by Mrs. Wall and those acquired by McCombs through deeds, the language of the same being, "each agreeing to abide by the line as established by the surveyor and according to our deeds." If the 14.52 acres had not been described in any deed through which Mrs. Wall claims, and were included in the description of the lands conveyed to McCombs, the effect of the agreement, if enforced, would be to take the 14.52 acres from Mrs. Wall and convey it to McCombs, when in fact she had acquired title to it by adverse possession. Her husband had no authority to bind her by such an agreement. His general agency for her, which was established by circumstantial evidence, was insufficient to vest him with such power. On the other hand, if the 14.52 acres were included in the vague and indefinite description of land contained in the deed executed by Wiley J. Cammack to J. E. Ketchens on the 27th of November, 1873, the establishment or survey of the boundary lines would not be binding upon Mrs. Wall, because in that case they were run in mistake and ignorance or wilful disregard of the lands owned by her, and not according to her deed; and, if it was not included in the description of the lands in the deed under which Mrs. Wall or McCombs claims, neither of them would be entitled to it by virtue of anything that was done under the agreement to establish lines, because neither party promised to abide by any lines except those established according to their deeds. The boundaries of no land were to be ascertained by a survey, except those described in the deeds under which the parties claimed.

Was the plaintiff, Mrs. Wall, concluded as to the property in controversy in this action of the decree rendered in the suit instituted by A. W. Cammack and others? The rule decisive of this question and followed by this court in *Dawson* v. *Parham*, 55 Ark. 286, is stated by the supreme court of the United

States in *Russell* v. *Place*, 94 U. S. 608, as follows: "It is undoubtedly settled law that a judgment of a court of competent jurisdiction upon a question directly involved in one suit is conclusive as to that question in another suit between the same parties. But to give this operation to the judgment it must appear either upon the face of the record, or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered,—the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible." It further said in the same case "to render the judgment conclusive, it must appear by the record of the prior suit that the particular matter sought to be concluded was necessarily tried or determined,—that is, that the verdict in the suit could not been rendered without deciding that matter; or it must be shown by extrinsic evidence, consistent with the record, that the verdict and judgment necessarily involved the consideration and determination of the matter."

In *Shaver* v. *Sharp County*, 62 Ark. 78, it is said: "That which has not been tried cannot have been adjudicated. * * * That which is not within the scope of the issues presented cannot be concluded by the judgment."

The record in this case does not show what issues of law or fact were determined by the court in the suit instituted in the Ashley circuit court on the 21st of December, 1881. It does show that the court found that certain lands were held by Wiley J. Cammack in trust for the heirs of his deceased father, and decreed that one and a half acres in section ten, and "the northern part of the northeast quarter of section nine, and in township seventeen south, and in range four west, containing 90 acres, and lying on the southwest side of the public road,

known as the 'Hamburg and Grand Lake Road,' and north and west of a lane, vest in Alice Ketchens, now Mrs. Wall; and ordered that other lands, describing a part of them as the south part of the northeast quarter of section nine, in township seventeen south, and in range four west, be equally divided between Wiley J. Cammack and Rosamond Sherrer. There is no effort in the decree to define the boundaries of the land adjudged to plaintiff. One and a half acres were set apart to her in section ten. She is entitled, according to the decree, to eighty-eight and a half acres of land in addition. This lies on the southwest side of a public road, which runs through the north half of this quarter of a section, and northwest of a lane. How much of the north half of the quarter lies southwest of the road, and how much of the eighty-eight and a half acres lies in it, does not appear. It is evident that it could not be as much as eighty acres,—the whole of its contents. According to the evidence, and the landmarks with which it was described, it extended into the south half of the northwest quarter of section nine, and probably included that to which she had acquired title by adverse possession. There is nothing in the copy of the record in the suit instituted in the Ashley circuit court on file in this action, or extrinsic evidence, to show that Mrs. Wall's title or right to the 14.52 acres recovered in this action was necessarily or in fact tried, or determined, or involved, in the former suit, or that her possession of it was ever disturbed by anything that was done therein. She is not, therefore, concluded by the decree in the former suit, and can sue and contend for it (the 14.52 acres) in this action.

According to what we have said, the trial court committed no reversible error in refusing to give the instructions asked for by the defendant, and numbered first, second and third. The instruction copied in this opinion, and numbered fourth, was inapplicable. The only question submitted to the jury as to the title to the land in controversy was, has plaintiff acquired title to it by adverse possession? Had the instruction been given, it could have been of no assistance to the jury in deciding that question.

Judgment affirmed.