## G. W. JONES LUMBER CO. v. WISARKANA LUMBER COMPANY.

### Opinion delivered July 3, 1916.

1. CORPORATIONS—TWO CORPORATIONS WITH SAME OFFICERS—RIGHTS INTER SE.—The fact that two corporations have directors or other officers in common does not of itself prevent one from maintaining an action at law against the other; and a judgment rendered in such an action is valid, if free from fraudulent conduct on the part of the officers who procured the judgment.

2. CORPORATIONS—TWO CORPORATIONS WITH SAME PRESIDENT— VALIDITY OF JUDGMENT AGAINST ONE IN FAVOR OF THE OTHER.— Under the facts, *held*, that a judgment procured by one corporation against another corporation, they both having the same president, was not procured by fraud, and was a valid judgment.

3. CORPORATIONS—RIGHTS INTER SE OF MAJORITY AND MINORITY STOCK-HOLDERS.—The relative rights of majority and minority stockholders is measured by the charter and by-laws of the corporation; and the majority may impose upon the minority additional by-laws not inconsistent with the charter, but they have no right to impose by-laws providing gratuities to one of their number.

4. CORPORATIONS—RIGHTS OF MINORITY STOCKHOLDERS—ACTS OF MAJORITY—ABSENCE OF BY-LAW.—An attempt by the majority stockholders to vote the payment of back salary to the president of the corporation, in the absence of a by-law providing for the same, in opposition to the will of the minority stockholders is invalid.

5. CORPORATIONS—PAYMENT OF ILLEGAL SALARY—RIGHTS OF MINORITY STOCKHOLDERS.—The president of a corporation received an unauthorized payment of money as salary. *Held*, the president received the funds as a trustee, and he may be called to account by the minority stockholders.

6. COSTS—UNNECESSARY AUDIT OF CORPORATE BOOKS—LIABILITY OF INTERVENOR.—Where one N. intervened in an action between two corporations, causing an unnecessary audit of the books of one of them, the cost of the audit will be assessed against him.

Appeal from Craighead Chancery Court, Western District; *C. D. Frierson*, Chancellor; reversed.

*Mann, Bussey & Mann*, for appellants.

1. The judgment of the Circuit Court is conclusive as to the amount due. It was a valid judgment and constituted an adjudication of all matters in controversy. None of the provisions of Sec. 4431, Kirby's Digest, are alleged as cause for setting aside the judgment. Our statute does not require service of summons on all the stockholders of a corporation. Kirby's Digest, §§ 6045-6048.

2. The judgment was not voidable because G. W. Jones was president of both corporations, or because of interlocking directors or officers. 68 Ark. 492; 73 *Id.* 440; 75 *Id.* 415; 83 *Id.* 508; 9 *Id.* 261. Such judgment is not open to collateral attack by reason of alleged fraud in prior transactions. Cases *supra*. No fraud was practiced on the court in procuring the judgment.

3. Jones was properly allowed his salary as president by the directors, all of whom had notice of the meeting.

4. It was error to disallow the items of $4,054.75, $2,000 and $710.

5. It was error to charge the lumber companies or Jones with any portion of the cost. The intervener, Nash, should be taxed with all the costs. He caused the expensive audit unnecessarily. 1 Cyc. 364; 21 Ark. 255; 10 Cyc. 954.

*Lamb, Turney and Sloan,* for appellee, L. J. Nash.

1. The $3,000 salary of G. W. Jones was properly charged back to him. 96 Ark. 281; 70 Ill. App. 556; 78 Fed. 62; 36 Pac. 36; 47 *Id.* 810.

2. Exceptions to interest charges, commissions, loan of credit, double charges, were all properly sustained. The judgment in the law court did not conclude appellees as to these items. Jones was president of both companies and the contracts were voidable. 96 Ark. 281; 38 *Id.* 17; 47 *Id.* 269; 87 *Id.* 521; 70 *Id.* 232. He and his directors were trustees for all the stockholders. 96 Ark. 281; 35 *Id.* 304.

3. The judgment was not only voidable, but void. 32 Cyc. 554; 111 N. W. 747; 70 Pac. 679.

4. The entire burden of cost should have been imposed upon G. W. Jones, including the master's fee. The books should have been audited annually. Nash had nothing to do with the books. Jones' conduct rendered the audit necessary.

McCulloch, C. J. The Wisarkana Lumber Company is a corporation organized under the laws of the State of Wisconsin, but its assets have always been situated in Craighead County, Arkansas, where it constructed and operated a large lumber manufacturing plant and where a large body of timber lands owned by it is situated. It was organized with a capital stock of $100,000, divided into a thousand shares of the par value of $100 per share, of which the G. W. Jones Lumber Company, another

Wisconsin corporation, owned 657 shares, G. V. Nash 200 shares, C. L. Storrs 100 shares, B. C. Wettlaufer 40 shares, and the other shares were held by three individuals merely for the purpose of qualifying them as officers of the corporation, one of whom was G. W. Jones, who was made president of this corporation, and who was also the president and principal stockholder of the G. W. Jones Lumber Company.

The promoters of the corporation were G. W. Jones and G. V. Nash, who conceived the idea of purchasing a large body of timber lands somewhere in the South and establishing a mill and lumber business. Nash came South in search of timber land, and finally located a large tract in Craighead County, and upon his recommendation the lands were purchased by the G. W. Jones Lumber Company, and upon the organization of the Wisarkana Lumber Company the lands were conveyed to the latter. That occurred early in the year 1905, and a mill was built at Nettleton, Craighead County, Arkansas, and the manufacturing business was begun. G. V. Nash was elected treasurer and general manager of the corporation and was put actively in charge of its business at Nettleton. He continued to act in that capacity until the year 1909, when some difference arose between him and G. W. Jones, when he resigned as manager and another was put in his place. He continued to be treasurer of the company for about a year thereafter, but ceased to have any actual control over the affairs of the corporation. He sold 170 shares of his stock to the F. Kiech Manufacturing Company, a corporation controlled by his brother-in-law and doing business in Craighead County, and he sold the remaining 30 shares to his brother, L. J. Nash, who is one of the appellees.

On October 10, 1911, a suit was instituted in the chancery court of Craighead County by the Bank of Nettleton (a banking corporation controlled by the stockholders of the F. Kiech Manufacturing Company), the F. Kiech Manufacturing Company, and the administrator of F. Kiech, deceased, and G. V. and L. J. Nash, against the Wisarkana Lumber Company and the stockholders

and directors, alleging that the Wisarkana Lumber Company was insolvent, and asking that its affairs be wound up and that a debt to the Bank of Nettleton be paid out of the assets. Pursuant to the prayer of the complaint, a receiver was appointed and placed in charge of the assets of the Wisarkana Lumber Company, but subsequently an agreement was reached between all of the interested parties whereby the suit was withdrawn and the receiver discharged.

It appears from the testimony in the present case that from the time G. V. Nash severed his connection with the Wisarkana Lumber Company, the parties in interest, that is to say the Kiechs and the Nashs on one side and Jones on the other, dealt with each other at arms length and to some extent in antagonism to each other's interest, though their relations were not altogether unfriendly. The business of the G. W. Jones Lumber Company had been continued at the place of its domicile, Appleton, Wisconsin, and it acted as sales agent for the Wisarkana Lumber Company and made sales of the lumber produced at the Nettleton mill. It also advanced money from time to time for the Wisarkana Lumber Company and guaranteed its credit; and in August, 1912, an action at law was commenced by the G. W. Jones Lumber Company against the Wisarkana Lumber Company in the circuit court of Craighead County for the recovery of an amount of an account alleged to be due in the sum of $43,560.79. The suit was instituted at the instance of G. W. Jones, as president of the G. W. Jones Lumber Company. Said account, which was the subject-matter of that suit, covered all the transactions between the two corporations and showed a balance in the sum above named due to the G. W. Jones Lumber Company. Judgment by default was rendered in the circuit court in favor of the G. W. Jones Lumber Company for the full amount of the account on September 11, 1912, and on January 8, 1913, the G. W. Jones Lumber Company and G. W. Jones commenced the present suit in the chancery court of Craighead County against the Wisarkana Lumber Company for the purpose of winding up the affairs of the corporation and obtaining

satisfaction of the judgment debt due to the G. W. Jones Lumber Company.

The stock of the F. Kiech Manufacturing Company was then assigned to L. J. Nash and he intervened in the case to protect his rights as holder of that stock as well as the 30 shares which he had purchased from his brother, G. V. Nash. In the intervention plea of L. J. Nash, he attacked the validity of the judgment rendered in favor of the G. W. Jones Lumber Company, and also of a number of the items embraced in the account of that company against the Wisarkana Lumber Company. At the instance of the intervener, L. J. Nash, the court appointed an expert accountant as special master to examine the books and check up the accounts of the Wisarkana Lumber Company and make report. The master made an elaborate report, with findings favorable to the G. W. Jones Lumber Company, and exceptions thereto were filed by the intervener, some of which were sustained and others overruled. The exceptions covered items aggregating the sum of $11,627.02, and the court sustained the exceptions concerning four of the items aggregating $9,764.75 and struck those items from the account.

The court also decreed payment of the costs of the litigation as follows: "That the plaintiff, G. W. Jones Lumber Company, pay one-half of the costs, and that the Wisarkana Lumber Company pay one-quarter of the costs and that the intervener, L. J. Nash, pay one-quarter of the costs, * * * and that the said costs include the charge of the special master, Homer K. Jones, $3,137.45." Plaintiffs G. W. Jones and G. W. Jones Lumber Company appealed from so much of the decree as was against them, and the intervener, L. J. Nash, cross-appealed.

The first question presented concerns the validity of the judgment rendered in favor of G. W. Jones Lumber Company against the Wisarkana Lumber Company, for if that judgment was valid it constituted an adjudication of all the matters in controversy therein between the two parties to that suit, and this embraced all of the items covered by the exceptions, except one involving the

sum of $3,000 which will be discussed later. All of the other items were charges of the G. W. Jones Lumber Company against the Wisarkana Lumber Company, and, of course, if the judgment had any validity at all it constituted a final adjudication between the parties.

(1) It is not contended that the proceedings were not conducted in accordance with the statutes with respect to the issuance and service of process and the rendition of the judgment, but it is argued that the fact that G. W. Jones was president of both corporations, and instigated the litigation, makes the judgment voidable at the instance of the minority stockholders of the Wisarkana Lumber Company. This contention presents the question whether or not one of two corporations having what is termed interlocking directors or officers can maintain an action at law against the other. The authorities on that point hold squarely that the fact that the two corporations have directors or other officers in common does not of itself prevent one from maintaining an action at law against the other, and that a judgment rendered in such an action is valid if free from fraudulent conduct on the part of the officers who procured the judgment.

In Joyce on Actions By and Against Corporations (Section 226) the rule is stated as follows: "Although there is a commingling of officers of two corporations, as when some of the directors of one corporation are directors of another, still it does not prevent them from being distinct corporations, with a right to contract with each other in their corporate capacities, and to sue and be sued by each other in regard to such contracts, where the relations of the parties have not been abused. The fact that the stockholders of two separately chartered corporations are identical, that one owns shares in another, and that they have mutual dealings, will not, as a general rule, merge them into one corporation or prevent the enforcement against the insolvent estate of the one of an otherwise valid claim of the other. It is an elementary and fundamental principle that a corporation is an entity separate and distinct from its stockholders and from other corporations with which it may be connected."

Substantially the same rule is stated in another text book on the subject. Spelling's Corporate Management, Section 300. The text finds support in the decision of the Supreme Court of the United States in the case of *Leavenworth* v. *C. R. I. & P. Ry. Co.*, 134 U. S. 688, where it was held that the trust relation between two corporations did not prevent one from suing the other when there was no collusion or fraud in fact.

This brings us to the question whether or not there was any actual fraud in the procurement of the judgment. When the action at law was instituted, F. Kiech Manufacturing Company and L. J. Nash were the only two holders of stock which were antagonistic to the Jones interest. F. Kiech Manufacturing Company was located in Craighead County and was represented by attorneys who were members of the bar at the City of Jonesboro, where the action was pending. They were apprised of the pendency of the litigation and applied to the attorneys for the plaintiff for a statement of the account, which was furnished them, and every opportunity was given to them to consider whether or not a defense should be offered for the F. Kiech Manufacturing Company. After consideration, those attorneys reached the conclusion that no defense should be made by their client, and so notified the attorneys for the plaintiff, who then asked the court for a judgment by default, which was rendered. L. J. Nash is a lawyer and resided in Wisconsin. He had been practicing law there for a great many years, and had been on terms of intimacy with G. W. Jones and for many years had been the attorney for Jones and the G. W. Jones Lumber Company.

Nash and Jones had had considerable correspondence about disposing of the assets of the Wisarkana Lumber Company, but there was no evidence that Nash received any information concerning the pendency of the suit at Jonesboro until September 7, 1912, when he addressed a letter to G. W. Jones at the office of the G. W. Jones Lumber Company in Appleton, making inquiry about the suit pending at Jonesboro, and also about the affairs of the corporation, whether it was insolvent or not, etc.

Jones was absent at the time, but some one in his office answered the letter, stating that Mr. Jones was absent, and that his attention would be called to the matter on his return. It appears that Jones was then in Arkansas, and the judgment was rendered before his return, and when Nash heard a day or two later that judgment had been rendered, he protested against it but took no steps then towards having the judgment set aside. The antagonism between the parties grew more and more acute until it culminated in the present litigation.

(2) We do not think that the testimony supports a charge of fraud in the procurement of the judgment. All of the items of the account sued on were disclosed by statements that were furnished by the G. W. Jones Lumber Company to the Wisarkana Lumber Company from time to time, and any stockholder had the opportunity to know what was embraced therein. Those accounts became accounts stated, within the meaning of the law, and it is doubtful whether a defense against any of the items could have been successfully made. There is no evidence whatever that G. W. Jones intended to conceal the institution and pendency of the suit in the circuit court of Craighead County. On the contrary, the indications are that he instituted the suit openly, and that the pendency of the suit came to the knowledge of the stockholders most interested on the other side, namely the F. Kiech Manufacturing Company. That concern was operated by men there in the same county, and having attorneys practicing at the bar who would likely take notice of any litigation which affected the rights of their clients. The correspondence between the attorneys, which is set out, showed that the attorneys for the respective parties dealt with each other in the most courteous way, without any effort to cut off any right to present a defense, and that not until the attorneys for the F. Kiech Manufacturing Company had declined to make defense for their client was there any effort to secure a judgment by default. The attorneys for the plaintiff in that action doubtless assumed, as they had the right to do, that if one of the antagonistic stockholders was

informed as to the pendency of the suit the information would be conveyed also to the other one.    It is significant that both of those stockholders were purchasers from G. V. Nash, a brother of the intervener, and that when the intervener was preparing to appear in this action he secured a transfer of the stock of the F. Kiech Manufacturing Company to him solely for the purpose of giving him additional status in this litigation as a large stockholder.    The proof shows that it was transferred to him merely for the purpose of bringing it into this litigation and for no other purpose.    Under those circumstances we are unwilling to say that there was any fraudulent conduct on the part of G. W. Jones which rendered the judgment voidable.

Now, this settles the controversy concerning all the items except the item of $3,000 referred to above, which was the salary of G. W. Jones, as president of the Wisarkana Lumber Company.    In the year 1911, after G. V. Nash severed his connection with the corporation, the board of directors met and allowed G. W. Jones a salary of $3,000 for the period of six years prior to that time.    So far as is disclosed by the evidence in this case, there was no by-law authorizing the payment of salary to the president, nor had there been any contract with respect to such a charge.    The evidence shows that Jones acted as president during all the time, and that he made frequent trips to Arkansas, and in other ways gave attention to the business of the corporation.    The evidence is sufficient, in other words, to warrant a finding that G. W. Jones earned that sum of money by services rendered to the corporation, but that is not the true test, we think, of the right to collect the salary under the circumstances shown in this case.

(3-4)    The relative rights of majority and minority stockholders must be measured by the charter and by-laws of a corporation, and minority stockholders had a right to look to the courts for protection from a violation of their rights.    The majority have the right to impose upon the minority additional by-laws not inconsistent with the charter, but they have no right to pay gratuities

to one of their number.    If the by-laws had been amended so as to authorize the payment of a salary to the president, then it would have been competent to pay Mr. Jones the salary thereafter earned under the by-laws; but it does not appear that this payment was made pursuant to any by-law.    It was merely voted to him as a back salary for services already rendered.    The minority stockholders had the right to assume, in the absence of a by-law or contract, that no salary would be paid, and the attempt of the majority to vote a salary to the president for past services was a distinct violation of the rights of the minority.

(5)    This item was credited to G. W. Jones on the books of the G. W. Jones Lumber Company, and a corresponding charge was made against the Wisarkana Lumber Company.    In this way the G. W. Jones Lumber Company advanced the money for the Wisarkana Lumber Company and paid it over to Jones.    So far as concerns the account of the G. W. Jones Lumber Company, it will be conceded that the judgment at law was a bar to any further inquiry as to the item, but it does not follow that in this proceeding Jones, as president of the Wisarkana Lumber Company, cannot be called to account for a sum of money which he had wrongfully accepted from the funds of the corporation.    The matter stands the same as if he had caused a check to be drawn by the Wisarkana Lumber Company on its bank to pay this sum. Having received the funds without being entitled to it, he is a trustee to that extent, and the minority stockholders have a right to call him to account for it, and that right is not barred by judgment recovered by the G. W. Jones Lumber Company against the Wisarkana Lumber Company.    We are of the opinion, therefore, that the court was correct in rendering a judgment against G. W. Jones for that amount.

(6)    The only other point which we deem it necessary to discuss is that which relates to the award of costs, it being the contention of counsel for plaintiffs that the court erred in assessing the fee of the accountant as a part of the costs to be paid by them.    There seems to

be much force in the contention that the intervener, Nash, caused a fruitless audit of the books of the company, and that he alone should bear the expense. It is true that nothing was accomplished by the audit of the books. The items in dispute were known to the parties, or were easily ascertainable, and it does not appear that there was any real necessity for having the books audited. There were negotiations between the parties about the examination of the books, and Jones offered to permit Mr. Nash to have the books audited, and the latter selected an accountant, who failed to do the work because Jones objected to the books being taken away from the office of the company. It was not unreasonable to insist that the books be not removed from the office, and if an examination of the books was desired it ought to have been made at the place where the books were ordinarily kept. The report of the master was favorable to the plaintiffs, and the only errors that were found in the books were very slight ones and were against the interests of the G. W. Jones Lumber Company. The audit resulted in nothing favorable to the intervener, and it shows that the charges of improper bookkeeping were unfounded.

There is no reason, therefore, why either the Wisarkana Lumber Company or G. W. Jones Lumber Company, or G. W. Jones himself, should be required to pay any of that unnecessary expense, and we are of the opinion that the court ought not to have included it in the general costs, but should have adjudged that item against the intervener. The matter of costs was within the sound discretion of the chancellor, but we think it amounted to an abuse of that discretion to tax this large unnecessary expense against those who gave no cause for it.

The decree is therefore reversed, and the cause remaned with directions to enter a decree in accordance with this opinion.

Wood, J., dissents as to decree for costs.