MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* McGUIRE.

4-7037                                    169 S. W. 2d 872

Opinion delivered April 5, 1943.

*Thomas B. Pryor* and *Harvey G. Combs,* for appellant.

*E. H. Bostic* and *Phillip McNemer,* for appellee.

McFADDIN, J. This case involves the question of damages caused by the construction of a ditch. Appellant was defendant in the lower court, and, from a judgment of $300, has prosecuted this appeal.

## Facts.

In October, 1938, appellant constructed a ditch along the right of way in order to drain surface water. This ditch was adjacent to the eighty acres of land owned by W. H. Martin; and in October, 1940, Martin sued appellant for damages to the land resulting from the construction of the ditch. The complaint in that case alleged that prior to the construction of the ditch the lands were in a high state of cultivation and adapted to the growing of cotton and other crops, and free of overflow; but since the construction of the ditch the lands had become "practically useless on account of the overflow water which said ditch pours on the same in enormous quantities after each hard rain, thereby making said land practically useless; . . . that the overflow water has washed deep gullies in the land and has washed the soil from the land to such an extent that the land is useless." Martin sought damages in the amount of $1,000.

On April 16, 1941, the court sitting as a jury found for the plaintiff and assessed his damages at the sum of $150 "for damage to the following described land as set out in the complaint . . ." Judgment was rendered for Martin for $150 and interest and costs; and the judgment was paid and satisfied of record.

While the above-mentioned cause by Martin was pending against appellant, Martin rented the same eighty acres of land to the appellee McGuire. He planted the land and his crops were destroyed in the Spring of 1941 by reason of the water from the said ditch overflowing the eighty acres of land. McGuire then filed the present suit against the appellant for $1,400 as damages to his crops destroyed in 1941. Appellant pleaded the former suit and recovery by Martin as *res judicata*. The present cause was tried on a stipulation; and there was no evidence introduced tending to show that any change of any

kind had occurred in the ditch or the railroad right-of-way from the original construction in 1938. There are two questions: 1. The nature of the damages. 2. The plea of *res judicata*.

## 1. The Nature of the Damages

The law of this state is well settled that: If the damages from the construction are recurrent, then there may be a recovery after each infliction of damages; but if the damages from the construction are original, then there can only be one recovery. The early decisions are listed in the case of *C., R. I. & P. Ry. Co.* v. *Humphreys,* 107 Ark. 330, 155 S. W. 127, L. R. A. 1916E, 962, where, regarding limitations, the rule is stated: "If it is of such a construction as that damage must necessarily result, and the certainty, nature and the extent of this damage may be reasonably ascertained and estimated at the time of its construction; then the damage is original and there can be but a single recovery and the statute of limitation against such cause of action is set in motion on the completion of the obstruction. If it is known merely that damage is probable, or, that even though some damage is certain, the nature and the extent of that damage cannot be reasonably known and fairly estimated, but would be only speculative and conjectural, then the statute of limitation is not set in motion until the injury occurs, and there may be as many successive recoveries as there are injuries."

While the statute of limitations is not involved in the case at bar, still the above-quoted rule is fully applicable when applied to a case like the one here, involving the question of recovery in one action or in a succession of actions. It is clear that when Martin filed his suit in 1940 the nature and extent of his damages were known with reasonable certainty; otherwise he would have had no case to file. So under the authority of the above-quoted case we hold that the damages were original and that the original recovery by Martin is the only one for which the appellant is liable. *Board of Directors* v. *Barton,* 92 Ark. 406, 123 S. W. 382, 25 L. R. A., N. S., 645, 135 Am. St. Rep. 191; *Louisville, etc., Ry. Co.* v. *Jackson,* 123

Ark. 1, 184 S. W. 450, Ann. Cas. 1918A, 604; *St. Louis, etc., Ry. Co.* v. *Miller,* 107 Ark. 276, 154 S. W. 956.

Appellee urges that the case of *C., R. I. & P. Ry. Co.* y. *McCutchen,* 80 Ark. 235, 96 S. W. 1054, applies here; but in the McCutchen case the overflow was caused by the ditch being filled up, and it was thus a recurring damage. Here there was no proof of any kind that there was any change in the condition of the ditch from its original construction to and including the trial of the present case; so the McCutchen case is not in point. Appellee cites as applicable to the case at bar the cases of *St. Louis, etc., Ry. Co.* v. *Biggs,* 52 Ark. 240, 12 S. W. 331, 6 L. R. A. 804, 20 Am. St. Rep. 174; *Railway Co.* v. *Yarborough,* 56 Ark. 612, 20 S. W. 515; *St. Louis, etc., Ry. Co.* v. *Stephens,* 72 Ark. 127, 78 S. W. 766; *Daniels* v. *Batesville,* 189 Ark. 1127, 76 S. W. 2d 309; *Baldwin* v. *Neal,* 190 Ark. 673, 80 S. W. 2d 648; *St. Louis-San Francisco Railway Co.* v. *Spradley,* 199 Ark. 174, 133 S. W. 2d 5. Each of the cases turns on whether or not at the time of the construction (ditch, culvert, levee, or other similar work) it was then uncertain whether the construction would injure the land. Here, as previously pointed out, the record shows affirmatively that the landowner (Martin) recognized the certainty of the damages and filed suit and recovered. The measure of damages was the difference between the value of the land before the ditch was constructed and the value of the land after the ditch was completed, and the allegations in the complaint were designed to show that measure of damages. *St. Louis, etc., Ry. Co.* v. *Miller,* 107 Ark. 276, 154 S. W. 956. When Martin recovered the damages in 1940, he recovered the original and permanent damages.

## 2. *Res Judicata*

Appellee has pleaded the Martin judgment as *res judicata* against the present suit; and we find that this plea is well founded. As stated in 30 Am. Jur. 908: "Briefly stated, the doctrine of *res judicata* is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue,

as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.''

And in 30 Am. Jur. 957, in discussing who are privies within the rule of *res judicata*, it is stated: ''In general, it may be said that such privity involves a person so identified in interest with another that he represents the same legal right. It has been declared that privity within the meaning of the doctrine of *res judicata* is privity as it exists in relation to the subject-matter of the litigation, and that the rule is to be construed strictly to mean parties claiming under the same title.'' See *Meyers* v. *Eichenbaum,* 202 Ark. 438, 150 S. W. 2d 958, and cases and authorities there cited.

Appellee was the tenant of Martin, so certainly he was Martin's privy. In the case of *C., R. I. & P. Ry. Co.* v. *Humphreys,* 107 Ark. 330, 155 S. W. 127, L. R. A. 1916E, 962, the tenant was held to be barred when his landlord was barred. This court said: ''If the owner of the land was barred, the appellees as tenants were. This feature of the case is very similar to the case of *Board of Directors, St. Francis Levee District,* v. *Barton,* 92 Ark. 406, 123 S. W. 382, 25 L. R. A., N. S., 645, 135 Am. St. Rep. 191. In that case Barton was a tenant in possession of the land which was overflowed, under a lease for a term of years, including the years 1906 and 1907, when the crops were destroyed by the impounded water. The levee which impounded the water and caused the overflow was constructed in 1899 and in holding that the cause of action was barred, the court there said: 'It would perhaps be more accurate, instead of saying that plaintiff's cause of action was barred, to say that the injury done by the construction of the levee in 1899 was a permanent injury to the land, and not to the crops subsequently planted and grown thereon; and, as the plaintiffs did not own the land, and had no interest therein at the time, the injury was inflicted, no cause of action ever arose in their favor'.''

The above case is ruling here; and it follows that the trial court committed error in rendering judgment for appellee.

The judgment is reversed and the cause is dismissed.