HASTINGS *v.* ROSE COURTS.

5-3074                                           373 S. W. 2d 583

Opinion delivered December 23, 1963.

[Rehearing denied Jan. 20, 1964.]

*House, Holmes, Butler & Jewell,* by *Philip E. Dixon,* for appellant.

*Moses, McClellan, Arnold, Owen & McDermott,* by *Wayne Owen* and *Bonner, Mitchell & Hays,* for appellee.

Ed. F. McFaddin, Associate Justice. This is a boundary line dispute involving property in Lots 1 and 2 of Rapley Estate in Pulaski County. Rose Courts, Inc., an Arkansas corporation, owns the east portion of Lot 2; and Harry L. Hastings and wife[1] own the west portion of Lot 1. Running north and south between Lots 1 and 2 there was and is an unopened avenue 40 feet wide, east to west, and the lots of the litigants herein abut on said unopened avenue. Rose Courts brought this suit against Hastings to have the Chancery Court establish the true location of the unopened 40-foot avenue, and also to enjoin Hastings from alleged trespass on Rose Court's property west of the unopened avenue. Rose Courts claimed that the unopened avenue was about 84 feet east of where Hastings claimed it to be. Hastings claimed: (a) that previous litigation was *res judicata* against Rose Courts; and (b) if *res judicata* were not sustained, the unopened avenue was 84 feet west of where Rose Courts claimed it to be. Neither side claimed title in any way to the unopened avenue.

The litigation has a considerable historic background. In 1872 the Pulaski Probate Court directed the administrator of the Estate of Charles Rapley to file a plat of portions of Sections 10, 11, and 14. This plat was filed and showed said Lots numbered 1 to 8 of Rapley Estate, each lot[2] containing approximately 9 acres; and the plat showed an unopened (and unnamed) avenue 40 feet wide east to west, running north and south, and separating Lots 1, 4, 5, and 8 on the east side of the avenue from Lots 2, 3, 6, and 7 on the west side of the avenue. The plat did not show definitely whether the property

---

[1] The original defendants were Harry L. Hastings and wife, and in the course of the litigation they transferred their title to the Hastings Realty Company, an Arkansas corporation. We continue to refer to all of the defendants as "Hastings."

[2] In some instances, they are referred to as "lots" and in others as "blocks"; but the interchange of these words is not a material matter in this litigation.

line immediately west of the Rapley Estate was the Quapaw Line or the line of Cox's Quapaw Addition, which addition is 170 feet east to west and several hundred feet north and south. This failure of the plat to establish the said west line of Rapley Estate was probably the origin of the litigation herein to be mentioned. Except for the matter of *res judicata,* subsequently to be discussed in detail, the issue could be simply stated: if the west line of the Rapley Estate bordered the Quapaw Line, then the 40-foot avenue here involved should be as contended by Hastings; but if the west line of the Rapley Estate bordered Cox's Quapaw Addition, then the 40-foot avenue should be as contended by Rose. In other words, a strip of about 84 feet is involved in the present litigation, depending on who is right about the location of the unopened avenue.

A voluminous record was made in the Trial Court with scores of exhibits consisting of plats, surveys, court orders, deeds, and other instruments. A number of engineers and surveyors testified, and some even repudiated their own previously made plats as to location of the 40-foot avenue. Such repudiation tended to place the issue in grave doubt as to the actual location of the 40-foot strip.[3] The Trial Court denied Hastings' plea of *res judicata* and fixed the 40-foot avenue at the place urged by Rose Courts; and from that decree Hastings has appealed, urging two points:

"1. The Trial Court erred in not holding the present action barred by reason of Pulaski Chancery Cases No. 82474, No. 90142, and No. 101718, based on the law of *res judicata.*

"2. The Court erred in not locating the forty foot avenue as shown on the C. T. Brandt Survey of December 11, 1947."

We do not reach appellants' second point because we are convinced that Hastings' plea of *res judicata* should have been sustained; and we now give the situa-

---

[3] On this see *Raper* v. *Morrow,* 222 Ark. 414, 259 S. W. 2d 499, subsequently discussed.

tions which show the applicability of such plea. First, we give the line of title of each litigant from the various deeds, all duly recorded:

(a) Rose Courts, the present appellee, received its deed from Arkansas Courts, dated June 27, 1950; Arkansas Courts received its deed from Arkansas Real Estate Company, Inc., dated December 9, 1949; and Arkansas Real Estate Company, Inc. received its deed from Little Rock Investment Company dated April 4, 1947.

(b) Harry L. Hastings and wife received their deed from C. C. McCord, dated May 10, 1955; and C. C. McCord received his deed from the State of Arkansas, dated December 27, 1935.

Certain cases in the Pulaski Chancery Court need to be identified:

(a) Case No. 82474 was by C. C. McCord, as plaintiff, against Arkansas Real Estate Company, Inc., as defendant. The decree rendered in February 1949 recited that McCord's title to the west 156.3 feet of Lot 1 Rapley Estate (that would be along the unopened avenue) was quieted, and that the boundary line between Lot 1 and Lot 4 (to the south of Lot 1) Rapley Estate "is shown by Exhibit 8 herein, same being a plat of the survey made by C. T. Brandt December 11, 1947." It will be observed that McCord owned his portion of Lot 1 until May 1955, and that Arkansas Real Estate Company, Inc. owned its portion of Lot 2 until December 1949, and that the parties to the present litigation claim through the respective parties in said Case No. 82474.

(b) Case No. 90142 in the Pulaski Chancery Court was dismissed by voluntary non-suit and is unimportant.

(c) Case No. 101718 in the Pulaski Chancery Court was styled, *Arkansas Real Estate Company, Inc.*, as plaintiff, v. *C. C. McCord and wife*, defendants, and filed January 18, 1955. In that case the Arkansas Real Estate Company, Inc. claimed ownership of the west 84 feet of Block 1, Rapley Estate (same being a portion of the Hastings property). It will be observed that Arkansas

Real Estate Company, Inc. conveyed its title to Lot 2 in 1949 to Arkansas Courts, yet in 1955 Arkansas Real Estate Company, Inc. was claiming against McCord 84 feet from Lot 1, Rapley Estate. Against such claim in Case No. 101718, McCord pleaded that the decree in Case No. 82474 was *res judicata* against Arkansas Real Estate Company, Inc.; and by decree of July 28, 1955, McCord's plea of *res judicata* was sustained.

(d) Case No. 107579 in the Pulaski Chancery Court is the present case; and Hastings has pleaded the earlier cases as *res judicata*.

Mr. R. M. Traylor, President of Rose Courts, and also President of both of the predecessor corporations, Arkansas Courts, and Arkansas Real Estate Company, Inc., was called as a witness by Rose Courts in this case; and Mr. Traylor admitted on cross examination that the 84 feet involved in the present suit was the same 84 feet that was involved[4] in Case No. 101718. It is true that on re-direct examination Mr. Traylor claimed he did not know what his attorneys had alleged in the previous

---

[4] Here is Mr. Traylor's testimony:

"Q. Mr. Traylor, you have testified in regard to a conversation had between you and Mr. Hastings subsequent or shortly after Mr. Hastings' purchase of the west part of Lot 1 or Block 1 of Rapley Estate?

"A. I did, sir.

"Q. And you testified that shortly thereafter you filed a lawsuit against Mr. Hastings?

"A. Well, I think it was after that. It was along about that same time. I don't remember how many days or weeks or months it was, but it was leading up to it after Hastings bought the property and *it came to a head about this 84 feet of ours that he is claiming.* (Emphasis supplied.)

"Q. Was not that 84 feet that you are talking about exactly the same 84 feet that is involved in this lawsuit here now?

"A. That 84 feet that is involved in this lawsuit?

"Q. Yes.

"A. What is the number of this lawsuit? Do you mean the present lawsuit?

"Q. Yes, sir.

"A. What is the number of that lawsuit, not that 82474 that you had awhile ago, is it?

"Q. No, No. 107579.

"A. *Of course, it would be.* (Emphasis supplied.)

"MR. MITCHELL: Wait a minute.

"A. There is a suit about where this street goes and if you prevail you would come 84 feet over into our property, or 85, whatever it is."

cases; but Mr. Traylor's admission must stand against Rose Courts, of which he is President. Such admission by Mr. Traylor is sufficient extrinsic evidence to identify the land in the previous litigation with the land in the present litigation and to establish Hastings' plea of *res judicata*. It is true that Arkansas Real Estate Company, Inc. had conveyed by deed to Arkansas Courts before the decree in Case No. 101718, but nevertheless the plea of *res judicata* was successfully used in Case No. 101718, with Case No. 82474 as the support for such plea; and Traylor's admission that the land in Case No. 101718 was the same as that claimed by Rose Courts in the present case establishes that the land in the present suit is the same as the land involved in Case No. 82474. Such extrinsic evidence supports the plea of *res judicata*.

The Latin words, *"res judicata,"* literally translated into English mean "a thing adjudged"; and freely translated into English mean "the matter has been decided." In *Mo. Pac. RR. Co.* v. *McGuire,* 205 Ark. 658, 169 S. W. 2d 872, we quoted the language from American Jurisprudence to explain *res judicata:*

" 'Briefly stated, the doctrine of *res judicata* is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.' "

In *Robertson* v. *Evans,* 180 Ark. 420, 21 S. W. 2d 610, Mr. Justice Humphreys, speaking for the Court, said:

"The test in determining a plea of *res judicata* is not alone whether the matters presented in a subsequent suit were litigated in a former suit between the same parties, but whether such matters were necessarily within the issues and might have been litigated in the former suit. *Gosnell Special School Dist. No. 6* v. *Baggett,* 172 Ark. 681, 290 S. W. 577; *Cole Furniture Co.* v. *Jackson,* 174 Ark. 527, 295 S. W. 970; *Prewett* v. *Waterworks Imp. Dist. No. 1,* 176 Ark. 1166, 5 S. W. 2d 735."

We have given the line of title of Hastings and Rose Court to show that Hastings is in privity with McCord, and Rose Court is in privity with Arkansas Real Estate Company. In *Mo. Pac.* v. *McGuire, supra,* we said:

"And in 30 Am. Jur. 957, in discussing who are privies within the rule of *res judicata,* it is stated: 'In general, it may be said that such privity involves a person so identified in interest with another that he represents the same legal right. It has been declared that privity within the meaning of the doctrine of *res judicata* is privity as it exists in relation to the subject-matter of the litigation, and that the rule is to be construed strictly to mean parties claiming under the same title.' See *Meyers* v. *Eichenbaum,* 202 Ark. 438, 150 S. W. 2d 958, and cases and authorities there cited."

In *Cook* v. *American Cyanamid Co.,* 227 Ark. 268, 297 S. W. 2d 933, we said:

"The contention that the parties are not identical under the doctrine of *res judicata* is without merit. See *Collum* v. *Hervey,* 176 Ark. 714, 3 S. W. 2d 993, to the effect that a grantee, under the doctrine of *res judicata,* stands in the relation of privy to the grantor."

In *Carrigan* v. *Carrigan,* 218 Ark. 398, 236 S. W. 2d 579, we quoted the language of the United States Supreme Court in *Russell* v. *Place,* 94 U. S. 606, which language had been approved by Mr. Justice Battle in *McCombs* v. *Wall,* 66 Ark. 336, 50 S. W. 876, which language is:

" 'It is undoubtedly settled law that a judgment of a court of competent jurisdiction upon a question directly involved in one suit is conclusive as to that question in another suit between the same parties. But to give this operation to the judgment it must appear either upon the face of the record, or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed,

without indicating which of them was thus litigated, and upon which the judgment was rendered,—the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible.' "

Here, as we have previously shown, Mr. Traylor's testimony was the extrinsic evidence which clearly showed that the 84-foot strip here in issue was the same strip in issue in Case No. 82474, and that in Case No. 101718 the plea of *res judicata* was successfully urged in favor of McCord (predecessor in title to Hastings) as to the said 84-foot strip. In *Morrow* v. *Raper,* 222 Ark. 414, 259 S. W. 2d 499, Mr. Justice Millwee said:

"There is no contention by plaintiff that the 1946 judgment was obtained by fraud or collusion. The only contention is that the surveyors made a mistake in establishing the boundary line in that suit. The fact, if true, that the question of the boundary line may have been erroneously determined in the former suit does not impair the conclusiveness of a valid judgment rendered by a court of competent jurisdiction, which has not been set aside or corrected on appeal. *Tri-County Highway Improvement Dist.* v. *Vincennes Bridge Co.,* 170 Ark. 22, 278 S. W. 627; *Strauss* v. *Missouri State Life Ins. Co.,* 188 Ark. 286, 66 S. W. 2d 299; 30 Am. Jur., Judgments, § 156; 50 C.J.S. Judgments, § 704."

In *Timmons* v. *Brannan,* 225 Ark. 220, 280 S. W. 2d 393, there had been a previous case to establish the boundary line between the parties; then later Timmons attempted to show that there was a street (called Ridge Street) between the properties of Brannan and Timmons, but we held the first case to be *res judicata,* saying:

" 'The test in determining the plea of *res judicata* is not alone whether the matters presented in the subsequent suit were litigated in a former suit between the same parties, but whether such matters were necessarily

within the issue and might have been litigated in the former suit.' The test is not whether the matters in the second suit were *actually* litigated in the former suit between the parties, but whether such matters were *necessarily within the issues and might have been litigated in the former suit.*"

Appellee cites and strongly relies on *Fawcett* v. *Rhyne,* 187 Ark. 940, 63 S. W. 2d 349, and *McCombs* v. *Wall,* 66 Ark. 336, 50 S. W. 876; but neither of these cases is ruling in the case at bar. In *Fawcett* v. *Rhyne* we held that the adjudication concerning one parcel in a larger tract was not *res judicata* in regard to another parcel, in the larger tract, not included in the previous case. In *McCombs* v. *Wall* we held that there was nothing, either in the record or in extrinsic evidence, to identify the land involved in the second case as having been in the original case, and thus *res judicata* was not established. The two cases relied on by the appellee are correct, but the law enunciated in those cases is not applicable to the case at bar because, here, there is extrinsic evidence that the tract now involved was also involved in the previous litigation.

Finally,[5] we mention *Rose* v. *Jacobs,* 231 Ark. 286, 329 S. W. 2d 170, wherein we quoted with approval from 50 C.J.S. 293, "Judgments" § 763:

" 'Since the identity of parties is not a mere matter of form, but of substance, the rule of *res judicata* should not be defeated by minor differences of parties. Thus, where the issues in separate suits are the same, the fact that the parties are not precisely identical is not necessarily fatal to the conclusive effect of the prior judgment, and a substantial identity is sufficient. * * * This rule, that there must be a substantial identity of parties as

---

[5] In addition to the cases heretofore cited, we have a number of other cases on *res judicata* which are germane to the points here discussed. Some such cases are: *Watson* v. *Suddoth,* 218 Ark. 960, 239 S. W. 2d 602, *certiorari* denied U. S. Supreme Court, 342 U. S. 885, 96 L. Ed. 664, 72 S. Ct. 174; *Langford* v. *Griffin,* 179 Ark. 574, 17 S. W. 2d 296; *Jones Lmbr. Co.* v. *Wisarkana Lmbr. Co.,* 125 Ark. 65, 187 S. W. 1068; *Cleveland-McLeod* v. *McLeod,* 96 Ark. 405, 131 S. W. 405; *Sauls* v. *Sherrick,* 121 Ark. 594, 182 S. W. 269; *Gordon* v. *Clark,* 149 Ark. 173, 232 S. W. 19; *Lillie* v. *Nunnally,* 211 Ark. 202, 199 S. W. 2d 751; and *Barton* v. *Meeks,* 209 Ark. 903, 193 S. W. 2d 138.

well as of the subject matter, is based on the fundamental principle that no man can be deprived of his property except by due process of law, a principle which in the United States has been embodied in the Federal Constitution, and in the constitutions of the several states. *It has also been held that the true reason for holding an issue res judicata is not necessarily the identity or privity of the parties, but the policy of the law to end litigation by preventing a party who has had one fair trial of a question of fact from again drawing it into controversy, and that a plaintiff who deliberately selects his forum is bound by an adverse judgment therein in a second suit involving the same issues, even though defendant in the second suit was not a party, nor in privity with a party, in the first suit.' "*

So we conclude that Hastings' plea of *res judicata* should be sustained; and it follows that the Chancery decree is reversed and the cause remanded, with directions to sustain Hastings' plea of *res judicata* and to dismiss the complaint of Rose Courts.

GEORGE ROSE SMITH, WARD & JOHNSON, JJ., dissent.

GEORGE ROSE SMITH, J., (dissenting). Today's decision is demonstrably unjust. In that the Hastings Realty Company is acquiring a strip of land to which it has no title whatever. On the merits only five witnesses with engineering or surveying experience testified. All five of them fixed the disputed boundary line in accordance with the contentions of the appellee and the findings of the chancellor. Not one syllable of testimony to the contrary was offered by Hastings. That the strip actually lies within the tract described in the appellee's deed is, on the record before us, an undisputed fact.

Yet Hastings emerges as the owner of the land. This result comes about through an application of the doctrine of *res judicata*. Despite the majority's protracted discussion of elementary principles of law, as far as I can see the rule of *res judicata* actually has nothing at all to do with this case.

Two earlier chancery cases are involved. The first, No. 82474, cannot possibly be conclusive of the present litigation and is not found to be so by the majority. That case did not concern the point now in controversy. There the only issue was the true location of the *southern* boundary of Lot 1. That issue had nothing to do with the true location of the western boundary of Lot 1, now in dispute. It happened that in Case No. 82474 there was filed a surveyor's plat, prepared with reference to the *southern* boundary, that erroneously located the *western* boundary in accordance with Hastings' present contention. But that error was wholly extraneous to the controversy then before the chancery court, did not lead to a binding decision fixing the *western* boundary line, and is not so interpreted by the majority in the case at bar.

After the decision in the first chancery case Arkansas Real Estate Company conveyed its interest in Lot 2 to this appellee, Rose Courts. Thereafter the second chancery case, No. 101718, was decided. That litigation did involve the boundary now in dispute; but the point is that the appellee, Rose Courts, was not a party to the case nor was it represented by a party. The plaintiff was Arkansas Real Estate Company, which had already conveyed Lot 2 to Rose Courts. Yet that is the decision that the majority hold to be *res judicata.*

Even after having studied the majority opinion I do not understand how it is that a grantee is bound by litigation brought by its grantor *after* the property has been conveyed to the grantee. This bewildering result seems to be reached solely because Traylor, the president of Rose Courts, happened to testify (inadvertently, as the majority seem to realize) that the land now in controversy is the same tract as that involved in the second chancery case.

Although this single statement in a record of several hundred pages is seized upon as the main support for today's decision, as far as I can see not even this statement justifies the result that is being declared. If this scrap of Traylor's testimony is treated as a statement of fact—an assertion of the true location of the western

boundary—then it is not only clearly inadvertent but also flatly contrary to, and overcome by, the wealth of engineering testimony that establishes the location of the boundary beyond question. On the other hand, if Traylor's statement is somehow looked upon as creating an estoppel against the corporation of which he is merely an officer, the short answer is that there can be no estoppel because there has been no reliance, no change of position, on the part of Hastings in consequence of this isolated bit of testimony.

I think the majority decision to be a serious miscarriage of justice.

WARD and JOHNSON, JJ., join in this dissent.