## JANES et al. vs. WILLIAMS et al.

| 31 | 175 |
| 166 | 626 |

1. PARTIES: *Non-Joinder.*

    As a general rule, all persons interested in the subject of the action, must be joined as plaintiffs or defendants, or an excuse shown for the non-joinder; where, however, the cause of the omission is otherwise apparent on the face of the complaint, no special averment is necessary.

2. ————: *Same.*

    In a proceeding involving the validity of a will, all persons named in it as legatees or devisees, are necessary parties.

3. PLEADING: *Parties.*

    Where a bill for the settlement and distribution of an estate alleges that the deceas'd died intestate, but discloses the fact that a will was made and published and duly probated according to the laws of another State, the latter allegations will control the former, and the legatees and devisees under the will should be made parties.

4. WILL: *Execution and proof of.*

    A will, as to real estate, must be executed according to the *ex rei sitae;* under our statute, a will must be proven by two witnesses, or if one is dead, insane, or his residence is unknown, the hand-writing of such witness, and of the testator, and such other circumstances as would be sufficient to prove the will on a trial at law, must be proven.

5. ————: *Authority of executor, proof of execution, etc.*

    Where the right of an executor to execute a will is questioned, it seems that the probate thereof, in the proper county, must be shown; but where a question arises as to the validity of a will not properly probated, the testimony of the subscribing witnesses, or other competent evidence, may be introduced to prove its execution.

6. PARTIES:

    Letters testamentary were granted to A, by the Probate Court, and were subsequently revoked.   Afterward a decree was rendered in a proceeding in equity, to re-instate him, under which he again assumed control of the assets, but this proceeding was void: *Held,* in a proceeding to charge him with the assets, that he should have been sued in his representative capacity.

7. WILL: *Probate.*

When a will has been admitted to probate in the proper county upon insuffi cient evidence, the parties interested in settng it aside, must pursue the remedy provided by the statute; however erroneous the order admit- ting it to probate may be, it is conclusive until corrected by a re-trial of the question of probate under the statute, and a bill in equity charging the parties acting under the will with the assets, cannot be maintained.

APPEAL from *Little River* County in Chancery.

Hon. THOMAS M. MCCRAY, Special Judge.

*Parsons,* for appellants.

*A. B. Williams,* for Jas. H. Williams.

WALKER, J.:

The plaintiffs filed their bill of complaint in the Little River Circuit Court, for the final settlement and distribution of the estate of James W. Duckett, deceased.

The bill is filed in the name of themselves and all of the re- maining heirs at law, on the father's side, of James W. Duckett deceased, of Sevier County, who died in the State of South Carolina, on the 14th July, 1860.

It is alleged that Duckett, at the time of his death, owned a large estate in lands and personal property, situate in Sevier and other Counties in Arkansas, and a small amount of personal property in South Carolina, where he died. It is alleged that Duckett died without having made a will, but that certain par- ties claiming to be executors under a pretended will, had taken possession of the estate without authority of law, and others under claim of administering upon said estate, and had failed to render any account of it or to make settlement,

The defendants demurred to the bill for various causes, some of which were sustained and others over-ruled. The bill was a dismissed.

Both parties have appealed.

The sufficiency of the bill is presented for our consideration.

It is first objected, that all of the heirs of James W. Duckett

are not made parties plaintiffs by name, nor is there any excuse offered for not having made them such.

Sixteen parties plaintiffs sue, in behalf of themselves and of the remaining heirs on the father's side of James W. Duckett, deceased.

Defendants insist that this is not sufficient, but in order to bring the plaintiffs within the exception to the general rule, that all of the parties interested in the subject of the suit, must be named either as plaintiffs or defendants, or an excuse shown for having failed to do so.

This, as a general proposition, is true, but, where the facts appear upon the face of the pleading, it is unnecessary to make any such special averment. Story says, "That in all cases governed by the exception, it seems proper to allege in the bill, (unless it is otherwise apparent upon its face) that the parties are too numerous to make it practicable, even if known, to prosecute the suit, if all are made parties."

Under our code practice, Gantt's Digest, sec. 4477 all parties united in interest, must be joined as plaintiffs or defendants. This section is qualified by sec. 4478, so as to dispense with the rule, in case there are many parties who have a common interest, or where they are so numerous as to make it difficult to bring them before the court within a reasonable time. In this case, we think the facts are sufficiently shown upon the face of the bill; and consequently are already brought to the knowledge of the court. It is alleged that Duckett died intestate, leaving neither wife, child, father, mother, brother, or sister, nor any descendants of either, nor any grandfather, or grandmother, nor any lineal or collateral descendants of a nearer degree than the grandfather's brothers and sisters, and their descendants; but that at the time of Duckett's death there were living of his kindred on the father's side, Duckett's father's brothers and

sisters, all of whom are named, as well as most of their descendants, omitting the names of a few of them as being by name unknown.

All of them have a common interest, and they are very numerous.

In this respect the bill was sufficient, and the court erred in sustaining the demurrer for this cause.

It is next objected that the legatees and devisees named in Duckett's will, should have been made parties' defendant.

If it appears from the allegations in the bill that Duckett made a will, and devised his estate, or part of it, to certain parties named in the will as legatees or devisees, and that the validity of the will, or the disposition of the estate devised or bequeathed is involved in the suit, then all of them were necessary parties' defendant.

If, in fact, Duckett made a valid will, then his estate must pass under it to the legatees and devisees to the exclusion of the plaintiffs.

And first, does the bill disclose the fact that Duckett made a will? Plaintiffs state that Williams produced to the Probate Court of Sevier County, at the October term thereof, 1860, an exemplified copy of what purported to be the will of Duckett, which bore the certificates of the Judge of the Court of Probate for Newberry District in South Carolina, and of the Ordinary of said court, all in due form as the law requires in the case of wills which have been proven in a foreign country, and showed that a paper writing purporting and alleged to be the last will and testament of James W. Duckett of South Carolina, had been presented for probate in said Court of Ordinary, and had been thereupon admitted to probate and probated.

And that the said John T. Duncan and James H. Williams, had been appointed executors of said will by said Court of Ordinary; copies of which are filed as part of the bill.

That said Probate Court of Sevier County thereupon admitted said exemplified copy of probate and record, as the will of a non-resident of the State, and ordered letters testamentary to be issued to Williams as executor of Duckett's estate, and that such letters were issued to him.

It is further alleged that by the provision of the will, Duckett devised one-half of his estate to his wife, Paulina Duckett. That he gave a legacy of $2,000 to each of the following named persons: Elizabeth, wife of Samuel McCracken; Martha, wife of James Hill; Elizabeth, wife of Isaac Johnson; Amelia Williams; Pauline Beesley; Thomas R. Glasgow and Samuel Murrill; and a legacy of $5,000 to the Freeman University and the residue of his estate to James H. Williams, J. T. Duncan, Branch Duncan, and Thomas Duckett.

A copy of the will of Duckett is filed as an exhibit and made part of the bill.

It is also alleged that Pauline Duckett and Murrill died during the life time of the testator—the first without heirs; and as to Murrill, that the legacy lapsed at his death, and that Williams and Duncan acting under the will have paid off all of the legacies therein named, except that of Murrill, which lapsed as aforesaid, and that of Pauline Beesley, which remained in part unpaid.

These are the material allegations which relate to the question, as to whether the legatees and devisees named in the bill were proper parties?

The allegation that Duckett died intestate, is not sustained by the facts disclosed. That Duckett made and published a will in South Carolina, which was duly probated according to the laws of that State, and that by the provisions of the will, the whole of the estate claimed by plaintiffs was disposed of, is clearly shown.

The copy of the will exhibited, contains all the necessary requirements of a will, was reduced to writing and signed and

sealed by Duckett. It was witnessed by three witnesses, one of whom deposed that he was present and saw Duckett sign and seal the will, as his last will and testament, that he with Smith and Newman, the other two subscribing witnesses, in the presence of testator and of each other, signed their names as witnesses to the same, and that he believes that said Duckett was of sound and disposing mind and memory at the time of signing said will. It will be seen that this is almost a literal compliance with the requirements of our statute (Gould's Digest, sec. 4), the only omission being that the witness did not state that *the witnesses subscribed their names as such, at the instance of the testator,* and with regard to which a question would arise whether, when the parties are all present, each witnessing the acts of the other; what, if any, formal request is necessary, or whether the situation and acts of the parties might not be sufficient, and a request implied; as if, for instance, an inquiry was made by the testator, or one in his presence, as to whether there were the necessary witnesses present, and it was announced that the witnesses, who subscribed the will were there, if no objection was made to them it might be well implied that the testator had given his consent.

In *Rogers* v. *Diamonds*, 13 Ark., 487, it was held unnecessary, in proving the execution of a will, for the witness to state that he subscribed it in the presence of the testator, that the fact may be implied from circumstances. But this is not an important inquiry in the present attitude of the evidence, because this is the only witness who deposed, and nothing was said as to the other witnesses, one of whom, if living and within reach of process, could have been sworn and examined. Our statute requires that the will shall be proven by two witnesses, and sec. 35 provides that in all trials respecting the validity of wills, if any subscribing witness be deceased, or cannot be found, the oath of the witness taken at the time the will was probated, is admissible in evidence. Sec. 21 provides, that when one of the witnesses

to a will shall be examined and the other witnesses are dead, insane, or their residence is unknown, then such proof shall be taken of the hand-writing of the testator, and of the witness dead, insane or absent, and of such other circumstances as would be sufficient to prove such will on a trial at common law.

In the case before us, no such additional proof was offered, and whatever may be the requisite evidence to establish a will under the laws of South Carolina, the proof was certainly not sufficient to establish a will for the devise of real estate in Arkansas. In such case the will, to be effective, must be executed according to the *lex rei sitae.*   Wharton Con. Laws, Ch. 9, sec. 645.

We are not called upon to decide a question of title under the will, or, as to what the effect of proof in South Carolina of the execution of the will, according to the laws of that State, would be upon the personalty in that State, or, indeed as to the personal property belonging to the testator in Arkansas. But the question is, as to the existence of a will—whether proven, or not. The question, as to the sufficiency of the proof to establish the will, may be raised upon an issue presented for that purpose, upon the trial of which, if not properly probated, the testimony of the subscribing witnesses, or other competent evidence may be admitted to prove the due execution of the will. In the case of *Campbell* v. *Garvin,* 5 Ark., 491, Garvin's devisees claimed title to land for the recovery of which they brought an action in ejectment. The will formed a necessary link in their chain of title; it had been improperly probated, so held by the court, but the subscribing witness was introduced over the objection of defendant. Upon appeal to this court, it was held that such proof was admissible. Probating a will is but the perpetuating the evidence of a fact, by the judgment of the court; the same evidence which is required to establish the validity of the will

in court, may, before a competent tribunal, be introduced to establish its validity elsewhere.

The complaint seems to have been framed under the impression, that because the will was not probated in Sevier County, where the land lay, that it was no valid will.

It is very true, that the will should be probated in the county in which the land is situated, or if there are lands in different counties in this State, in some one of them before letters testamentary can be granted. But we apprehend that a devisee may assert title to the land devised, and if upon trial he proves the will to be valid, his recovery would be as certain as if the will was offered in evidence with a certificate of probate. It is not the less a will because not proven, any more than a deed is not such upon its delivery, and before it is acknowledged, or is proven. The will in this instance lacks none of the apparent requisites of a will, and needs only to be proven; and before the devisees can acquire title to the property devised, it must be proven, by the subscribing witnesses to the will, or by such other competent evidence as is prescribed by law. If it is intended in this suit to raise a question as to the right to execute the will, then it would seem proper to make the necessary proof in the Probate Court of the county where the land lies, but if to recover the land devised, a suit in ejectment may be brought and the validity of the will established on the trial, by any competent evidence. Adams' Equity, page 249.

Under the state of case presented, we are of opinion that the legatees and devisees were proper parties.

It may be true that some of the legatees have been paid; if so, they should have been made parties and the payment of the legacy alleged, a fact which they had a right to controvert; if not paid they had a direct interest in the estate; and because they were not made parties, the demurrer to the bill, for this cause, was properly sustained.

Williams and Duncan, the executors named in the will, are made defendants, but not in their representative capacity. It is assigned as cause of demurrer that they should have been sued in their representative capacity.

So far as Duncan is concerned, having never been appointed executor in Arkansas, and being an executor in another State, he had no power to act as such in this State. If he came to Arkansas and took and appropriated to his own use property which belonged to the estate of Duckett, as a trespasser he may be held accountable, he was certainly not responsible as executor, nor was he a necessary or proper party to this suit.

Williams stands in a different attitude. After the will, or a copy of it, was filed in the Sevier Probate Court, and was there probated; letters testamentary were granted to him, and during the time that the letters remained unrevoked, he is charged with having unlawfully and without authority taken cotton belonging to the estate into his possession, and appropriated it to his own use; without reference to proceedings had in the Probate Court of Sevier County, at the term at which the letters were granted, which were instituted to revoke the letters granted to him, and which were set aside. At a subsequent term of the court, March 13, 1861, upon the petition of a party claiming to be interested in Duckett's estate, the Probate Court vacated and set aside the letters testamentary granted to Williams at the October term of the court, upon the alleged ground, that Williams was a non-resident of Arkansas, that his bond was insufficient, and that Duckett was, at the time of his death, domiciled in Arkansas. The action of the court seems to have been had under the provisions of the 35th section, Ch. 4, Gould's Digest, and substantially in accordance with its provisions, from which time Williams ceased to be executor of said estate. But after that time, as it is alleged, by force of a decree of the Circuit Court

of Little River County (a new county formed out of part of what was once Sevier County), Williams took possession of said estate and still holds it, without having rendered any account of his management or disposition of the estate.

So far as relates to the proceedings in the Chancery Court, as disclosed by the bill, it appears that Williams had, in 1868, filed his bill in chancery against numerous parties named as heirs of the estate of Duckett on the mother's side, (but in which the plaintiffs claimants, on the father's side were not made parties), and Reeder, Steel and Campbell. The cause came to a hearing at the April term of the court, 1872. Plaintiffs, upon leave of court, dismissed their suit as to all of the defendants except Reeder, Steel and Campbell; a decree *pro confesso*, was taken against Reeder, and the cause submitted to the court upon an agreed state of facts between plaintiff Williams and the defendants Steel and Campbell. We have no means of knowing what the issue was in this suit, other than that which appears by the decree, which was, that the letters of administration which had been granted to Briggs, Reeder and Campbell, by the Probate Court, should be set aside, that the letters testamentary granted to Williams, had been, and were then in force, and were valid, that he take into his possession the estate of Duckett, and account to the Probate Court, and that the administration of Reeder, Briggs and Campbell be closed, and the securities be discharged from liability. Why Steel should have been made a party does not appear, and why Briggs, who was not made a party, should have been embraced in the decree, is wholly unexplained; be this as it may, or whether as between the plaintiff and the defendants, who seemed to have agreed to a certain state of facts, the decree may not bind them, it is certain as between the plaintiff, Williams, and the plaintiffs in the suit under consideration, it could have no effect whatever, and is in no respect binding upon them. So far as plaintiffs' rights are concerned,

it established no right in Williams, as executor, and in no respect lessened his responsibility to them, if, in fact, they should prove to be entitled to Duckett's estate.   Nor did it discharge Reeder, Briggs and Campbell, from liability to account for any act for which otherwise they would have been liable.

Holding as we must, that the letters testamentary granted to Williams had been revoked, and that by force of the decree of the Chancery Court he could acquire no valid authority to act as such, still as he acted part of the time under a valid appointment, and afterwards under an appointment which he may have supposed valid, and has had possession of the estate, he should have been so charged.   The plaintiffs have studiously avoided recognizing Williams as executor, or as acting under a trust, but when all of the allegations are taken together, and when it is seen that the prayer of the bill is for an account of the property which has been so received by him, it was necessary and proper to have charged him as such.   If such is not the case, it is difficult to conceive of any grounds for equitable relief, and even when so considered, we are not prepared to decide that the plaintiff has made a case for equitable relief in his bill.

It is shown that Duckett was possessed of a large and valuable estate.   That certain parties assuming to act under a will, have had charge of it for a time.   That Reeder, Briggs and Campbell had, at different periods, been appointed administrators of the estate, that the estate has been also for a time in their hands, that no settlement has been made with the Probate Court, that there are debts that the personal property is not sufficient to pay, that most of the legacies have been paid.   They deny the validity of the will, and pray that the ownership to the property may be determined, that Williams who has had, and now has, the estate in his possession may be held to an account, and the estate divided.

Such is substantially the case made by the bill; in view of which, the question arises as to the equitable grounds presented in the bill. They must arise upon a state of facts which bring the case within some of the grounds for relief in equity—one in which adequate relief cannot be had in a court of law. The principles of equity, says Story, 1 Eq., 22, are as fixed and certain as the principles on which the courts of the common law proceed.

The primary and original object of the suit must be one clearly within the jurisdiction of the court, 1 Ark., 31, and not the less obligatory upon the parties or the court, because they are more liberal. Ib. 410.

If it was intended by the plaintiff to raise an issue of *devastavit vel non* in a court of law, his bill fails so to present his case.

The equity for administering the assets of a testator or intestate, does not authorize the Court of Chancery to try the validity of a will. The jurisdiction for that purpose, in regard to wills of personal estate, belongs to the . Ecclesiastical Courts, and in regard to the wills of real estate to the courts, of the common law, and our statute in observance of this rule requires, that at any time within three years after the final decision of the Probate Court, the party interested in any will may, by bill in chancery, impeach the decision, and have a re-trial of the question of probate, and that either party shall be entitled to a jury. This provision, Gantt's Digest, sec. 5794, extends to all wills, whether for real or personal property.

This question of will or no will, is of paramount importance. If there is a will then the plaintiffs are not entitled to the property, and have no right either in a court of law or equity to hold defendants to account.

The order and judgment of the court to admit to record the will as probated, upon the copy of the will and the proof and

orders certified from the Court of Ordinary of Newberry District, never was set aside, nor was there any attempt made to set it aside. The attack made upon the validity of the will, and its probate in Arkansas, is, evidently, based upon the assumption that it was not a will unless probated as such. That as Duckett resided in Sevier County, Arkansas, the will should be probated there to give it effect, and particularly as the landed estate of Duckett lay in Sevier County in this State. Let us concede that such should have been done, and that the evidence produced before the Court of Probate was not sufficient to warrant the judgment and decision of the court, and that the proceedings were erroneous, yet, however erroneous the judgment of the court, it is binding upon all parties until reversed by a higher tribunal. *Miller* v. *Barkeloo*, 8 Ark., 318.

At common law, the probate of a will in the Ecclesiastical Court was conclusive as to its execution only so far as related to personal property.

Our statute, sec. 17, Ch. 180, Gould's Digest, provides, that if the testator have a known place of residence in this State, his will shall be proven in the county in which he resided; if he have no known place of residence, and lands be devised, it shall be proven in the county in which the lands lie; and if he have no known place of residence, and there is no land devised, it shall be proven in the county in which the testator died; and if he died out of the State, in any county.

It will readily be perceived that, as the testator in this instance had a known domicil, and did devise land, it was necessary that the will should be proven in the county of Sevier, where the lands lie, and which was also his place of residence, as alleged by plaintiffs. In the case before us, there was an attempt to furnish what was assumed to be competent evidence, an authenticated copy of the will, the proof upon which it was established and probated in South Carolina, together with the statement that the

testator's domicil was in South Carolina. This is all of the evidence; there was nothing to prove the contrary; it was presented for the consideration and judgment of a court of competent jurisdiction, and was held to be sufficient. We think the evidence not sufficient; certainly not to devise real estate in Arkansas, but, until reversed and set aside, for which provision is made by statute, we do not feel at liberty to treat the judgment of the court as void.

In the case of *Townsend* v. *Estate of Downer*, 32 Ver., 216, when considering the effect to be given to a probated will, Aldis, J., said: "The will, having been approved by the Probate Court, and nothing appearing to show that the court did not have jurisdiction, its jurisdiction will be sustained. It is presumed to have jurisdiction till the contrary appears. The objection to the certificate authenticating the probate of the will in New York should have been taken in the Probate Court. The decree of the Probate Court admitting the will to probate here cannot be assailed in this collateral manner."

The probate of a will by the statutory courts in England or the United States is conclusive evidence that the document is testamentary. Wigram on Wills, part 2, p. 9.

In the case of *Jourdan* v. *Mier*, 31 Missouri, 40, Napton, J., said: "It is well settled that the probate of a will is a judicial proceeding. No particular form is prescribed by statute, in which the judgment of approval or probate shall be expressed.

    *     *     *     *     *     *     *

The judgment of the clerk, or court, pronouncing a will to be legally proven or probated, is entirely distinct from the evidence upon which the judgment is pronounced.    *    *    *

The objection to the admissions in evidence of the will of Joseph Jourdan were, that the proof upon which the probate was granted was insufficient.

" The insufficiency of the proof is no objection to the admissibility of the record of probate. If the will is admitted by the clerk, or the court, upon insufficient proof, the law has provided a mode by which the validity of the will may be disputed and decided."

This decision is decidedly in point. If the proof was insufficient to establish the will, the parties interested in setting it aside, had an adequate remedy afforded them by our statute, which provides (sec. 32, Ch. 180, Gould's Digest), " That if any person interested in the probate of any will shall appear within five years after the probate or rejection thereof, and by petition to the Circuit Court of the county in which such will was established or rejected, pray to have such will rejected (if previously established), or proven if previously rejected by the Court of Probate, it shall be the duty of the Circuit Court to direct an issue to try the validity of such will, which issue shall, in all cases, be tried by jury."

The 34th section makes a saving to infants, married women, persons absent from the United States, or of unsound mind, a like period after such disabilities shall have been removed.

We have carefully considered this question; it is one which may have a most important bearing upon the final determination of the case—and, after the most mature consideration, we are left the alternative of holding either that, however irregular the proceeding may have been in admitting the evidence adduced, or deciding it be sufficient to establish the will and admit it to record, as it was acted upon at the domicil of the testator, and in the county where most of the lands devised lay, the judgment and decision of the Court of Probate, probating the will and admitting it to record must stand until reversed or set aside, or to overturn the uniform series of decisions of this court for more than twenty years, and hold the orders and judgment of the Probate Court absolutely void.

The authorities and adjudicated cases to which we have referred, and in accordance with our own decisions, we must hold that the will of James W. Duckett must be taken and held as a probated will, with all the rights which arise under it.

After a careful consideration of the bill, we have been unable to find such a state of case as will entitle the plaintiffs to relief. Whilst they very clearly state the claim which they set up as heirs of Duckett, they not only show that he had devised and bequeathed the estate which they claim, but that, by the judgment of a court of competent jurisdiction, the will has been probated and recorded in the proper county; and while it is also clearly shown that the judgment of the Court of Probate was formed and rendered upon insufficient evidence, their remedy was clear and ample to reinvestigate and correct the error of the Probate Court. This they have neglected to do, although given ample time for that purpose by statute, and must abide the consequences. If the will is, in fact, invalid, if not susceptible of the required proof, they are sufferers from their own neglect; if, on the other hand, the will is valid, they have no interest in the estate. Let the decree of the court below be in all things affirmed.