TRI-COUNTY HIGHWAY IMPROVEMENT DISTRICT *v.*
VINCENNES BRIDGE COMPANY.

Opinion delivered December 14, 1925.

1. JUDGMENT—CONCLUSIVENESS OF DECREE SUSTAINING DEMURRER.— A decree rendered on sustaining a demurrer to a complaint is equally conclusive, by way of estoppel, of the facts confessed by the demurrer as a verdict finding the same facts would have been, and, where a demurrer goes to the merits, a judgment sustaining it is a bar to a subsequent suit on the same cause of action.

2. HIGHWAYS—JURISDICTION OF EQUITY TO WIND UP IMPROVEMENT DISTRICT.—The power of the chancery court to wind up the affairs of a road improvement district and to adjust claims against it is within the general jurisdiction of chancery courts over the enforcement of liens on real estate.

3. JUDGMENT—DECREE SUSTAINING DEMURRER.—A demurrer on the ground that a complaint does not state a cause of action involves the merits of the action, and a decree sustaining such demurrer is conclusive of everything necessarily determined by such decree.

4. JUDGMENT—REPRESENTATION OF CLASS BY INDIVIDUALS.—A suit by certain landowners against a road improvement district to review a decree adjudging the claims of creditors is for the benefit of a class of individuals having common rights that need protection, and a decree in such suit is binding on other landowners.

5. JUDGMENT—PRESUMPTION.—Where a decree allowing a claim against a road improvement district recites that evidence was heard, it will be presumed on collateral attack that any evidence necessary to support the decree was introduced.

6. JUDGMENT—CONCLUSIVENESS OF JUDGMENT SUSTAINING DEMURRER. —A general demurrer admits the facts alleged in the complaint, and a final judgment sustaining it is as conclusive of the same cause of action as if the plaintiff had proved such facts and judgment had been rendered against him.

7. JUDGMENT—RES JUDICATA—REASONS ASSIGNED.—The value of a plea of *res judicata* is not to be determined by the reasons which the court rendering the former decree gave for doing so.

8. JUDGMENT—EFFECT ON BAR OF ERROR OR IRREGULARITY.—So long as a decree remains unappealed from and in full force, it is a bar to further suits upon the same cause of action, though it may be erroneous or so irregular that it would be vacated on proper application.

9. EQUITY—BILL OF REVIEW.—Decrees of the chancery court, winding up the affairs of a road improvement district and allowing the claims of certain creditors, which stated that the claims were heard on certain resolutions before the board of commissioners relating to various claims of creditors and on the various contracts of claimants, which were set forth, *held* not erroneous on their face, on a bill of review.

10. JUDGMENT—FRAUD IN PROCUREMENT.—Evidence *held* not to establish fraud in the procurement of a decree winding up the affairs of a road improvement district.

11. EQUITY—BILL OF REVIEW—FALSE TESTIMONY.—False testimony in the procurement of a decree is not sufficient to justify a bill of review to vacate and set aside such decree.

12. EQUITY—BILL OF REVIEW—NEWLY DISCOVERED EVIDENCE.—To support a bill of review for newly discovered evidence, such evidence must not have been known at the time of the trial and could not have been known by the exercise of reasonable diligence.

13. EQUITY—VALIDITY OF VACATION DECREE.—Where proceedings for the adjustment of claims against a road improvement district were in fact adversary in character, though styled an *ex parte* proceeding, a decree entered in vacation by consent of the parties, in accordance with the statute, is valid and binding.

14. JUDGMENT—INTEREST—RES JUDICATA.—A decree which provided that no interest should run on certain claims allowed, not set aside by appeal or otherwise, was *res judicata* on the question of interest.

15. TAXATION—PENALTY FOR NONPAYMENT OF TAXES.—The Legislature is authorized to impose a penalty for nonpayment of special taxes in a road improvement district.

16. EQUITY—BILL OF REVIEW—MATTERS CONSIDERED.—In determining whether a bill of review should be sustained, the pleadings as well as the decree itself should be looked to.

Appeal from Craighead Chancery Court, Western District; *Sam Frauenthal,* Special Chancellor; affirmed.

*Horace Sloan* and *Arthur L. Adams,* for appellant.

*J. W. House Jr., D. K. Hawthorne, Wm. B. Kinealy, Seymour Riddle* and *A. P. Patton,* for appellee.

HART, J.   Appellees, the plaintiffs in the court below, brought this suit in equity against appellants, Tri-County Highway Improvement District, its commissioners and the landowners in the district to foreclose a lien in their favor upon lands in the district for indebtedness due them under an alleged decree of the chancery court rendered by consent on November 30, 1920.

An answer was filed which attacked the validity of said decree in so far as the claims of appellees, John R. Scott, Vincennes Bridge Co., and Hugh R. Carter are concerned, but did not attack the validity of said decree in so far as it relates to the other creditors of the Tri-County Highway Improvement District.

A cross-complaint was filed alleging that appellees had collected various sums on their claims which are sought to be recovered.

A bill of review was also filed for the purpose of setting aside the alleged decree of the chancery court of November 30, 1920, under which appellees are attempting to assert their lien on the lands of the district in satisfaction of their claims.

The decree of November 30, 1920, is sought to be vacated on several grounds.

First, it is insisted that said decree was rendered in vacation and is therefore a nullity.

Second, it is claimed that it is apparent from the decree itself that it is erroneous.

Third, that it is sought to be set aside upon the ground of newly discovered evidence, and also upon the ground of fraud.

Appellees interposed a plea of *res judicata,* and introduced evidence in support thereof.

A great volume of testimony relating to the merits of the case was introduced.

The chancellor sustained the plea of *res judicata* of appellees, and a decree was entered of record in accord-

ance with his finding. To reverse that decree appellants have prosecuted this appeal.

Having reached the conclusion that the chancellor was correct in sustaining the plea of *res judicata* of appellees, it is not necessary to abstract the evidence on the merits of the case or to determine the issues relating thereto. Indeed, it would be improper to decide the merits of the case, for the reason that we are of the opinion that the defense of *res judicata* made by appellees was properly sustained by the chancery court, and that necessarily ends the cause.

The facts relating to the defense of *res judicata* are practically undisputed and may be briefly stated as follows:

An act creating the Tri-County Highway Improvement District was passed by the Legislature of 1919, approved March 6, 1919. Road Acts of 1919, vol. 1, 510. The act was in the usual form of the special road acts passed at that session of the Legislature. Pursuant to its terms, the commissioners met and formed plans for the construction of the proposed improvement, and did various other things looking towards carrying out the construction of the proposed improvement.

On April 17, 1920, J. W. Kuykendall and numerous other landowners in the proposed improvement district brought suit in equity against the Tri-County Highway Improvement District and the commissioners thereof for the purpose of restraining them from doing any further work on the construction of the roads and ditches provided for under the act creating the district. In their complaint they alleged that the plans and specifications prepared by the commissioners under the provisions of the act creating the district include a construction of roads and also a drainage system which are two separate and distinct improvements. They also set up facts tending to show that the assessment of benefits by the commissioners was arbitrary, discriminatory and confiscatory, and that it was well known to said commissioners and their engineers that said contemplated improvements

could not be completed for anything like the amount of the assessment of benefits.

The defendants filed an answer in which they denied all of the allegations of the complaint and averred specifically that the system of drainage provided by the act was only such as would be necessary and proper for the construction of the roads provided for in the act creating the district.

On August 21, 1920, a resolution was adopted by the commissioners providing that the plans and assessments of benefits filed in the office of the clerk of the county court on March 20, 1920, were erroneous and void, in so far as any further work in making and completing said improvement was concerned. The stipulation further provided that all the work in said improvement district should be abandoned, and that the proposed improvement could not be made for the amount of benefits assessed against the lands, and that said lands would not be benefited by said improvement.

On August 24, 1920, which was a regular day of the August, 1920, term of the chancery court, a consent decree in said cause was entered of record. The chancery court found that, in accordance with the provisions of the stipulation above referred to and by the consent of the parties, the plans and assessment of benefits filed in the office of the county clerk on March 20, 1920, could not be used to complete said improvements; that the improvements contemplated in the act creating the district could not be made for the amount of the assessment of benefits, and that the affairs of the district should be wound up in the manner provided by law, the indebtedness ascertained and determined, to the end that any assessments which might be necessary upon the lands in the district might be imposed for such amounts as the district might owe.

It was decreed that all further work in the district be abandoned, and that the commissioners ascertain the amount of the indebtedness owed by the district and to whom due; that the plans and assessments which had

been filed in the office of the clerk of the county court be declared null and void; that this shall not be construed as a finding regarding the validity of any work done, or as to the validity of the assessments for the purpose of extending the same against the lands as assessed to pay for the indebtedness.

It was further decreed that nothing contained in the decree should affect the rights of any other persons having claims against the district. The court reserved the right to make all such further orders and decrees as might be necessary to wind up and terminate the affairs of said district.

On the 30th day of November, 1920, a decree was entered of record which bore a heading as follows:

"Tri-County Highway Improvement District and its Commissioners, W. R. Moyer, W. A. Smith, J. A. Weaver, A. L. Salmons, Herbert Wood, W. H. Woodruff, *ex parte.*"

This decree was entered of record in vacation in accordance with the allegations of a petition filed by the attorneys for the commissioners of the improvement district.

The decree is very lengthy, and need not be set out in full. It recites that the cause is submitted upon the petition of the Tri-County Highway Improvement District and its commissioners, a resolution of said board with reference to the claim of John R. Scott, a resolution with reference to the claim of Hugh R. Carter, and Carter & Knoch, a resolution with reference to the claim of the Vincennes Bridge Co., various other resolutions with regard to other creditors not necessary to mention, the intervention of John R. Scott, Hugh Carter, the Vincennes Bridge Co., and of numerous other creditors not affected by this suit and therefore not necessary to be more particularly referred to, the contract between said district and said John R. Scott, the contract between said commissioners and Hugh R. Carter, the contract between said district and the Vincennes Bridge Co., and numerous other contracts of said district with various creditors, the claims

of said John R. Scott, Hugh R. Carter, Vincennes Bridge
Co., and of various other creditors which had been filed
with the commissioners.

Continuing, the decree recites that, being advised in
the premises, the court finds from the pleadings and evi-
dence that the petitioner, Tri-County Highway Improve-
ment District, is indebted to John R. Scott, Vincennes
Bridge Co., Hugh Carter, and various other creditors, in
certain sums which are specifically set out, and a lien is
fixed upon the real property in the district for the pur-
pose of paying and discharging said claims in accord-
ance with the assessment of benefits as finally revised
and corrected by the commissioners of the district.

In March, 1921, by consent of the parties the decree
of November 30, 1920, was modified so as to provide that
all the indebtedness due by the district should not be
collected by one assessment.

On the 22nd day of April, 1921, C. W. Lashbrook and
numerous other landowners brought suit in equity
against the Tri-County Highway Improvement District,
its commissioners, John R. Scott, Hugh Carter, Vin-
cennes Bridge Co., and numerous other creditors of said
improvement district, for the purpose of setting aside the
consent decree of the chancery court rendered on the
24th day of August, 1920, and the decrees rendered in
vacation on November 30, 1920, and in March, 1921, above
referred to.

In this complaint it is alleged that, during the year
1920, the commissioners of the district, without authority
of law, undertook to abandon and dissolve said district
and to compromise and adjust the claims of creditors.
John R. Scott, Hugh Carter, Vincennes Bridge Co., and
other creditors are specifically mentioned as having
fraudulent claims and no right to demand of said com-
missioners the payment thereof.

The complaint further alleges that the commis-
sioners undertook to allow by resolutions said claims,
which are fraudulent; that said defendants knew that
they had no legal right to claims against said district, and

that their allowance was secured by fraud; that to secure their fraudulent claims aforesaid the consent decrees of August 24, 1920, and November 30, 1920, were entered of record. The consent decree of November 30, 1920, and that rendered in March, 1921, are specifically made a part of the complaint. What is termed an amendment to the complaint was filed, in which the allegation of fraud against appellees with respect to their claims is again set forth, and it is again alleged that their act in securing the consent decrees above referred to was a fraud upon the court.

It was further alleged that the commissioners were without legal authority to abandon said district or to allow any sums for work done, or for contracts to perform any work in the construction of the improvement.

It was further alleged that appellees herein knew at the time that the commissioners were without power to abandon the district and that the court was without power to fix a lien upon the lands for the purpose of paying their alleged claims. The prayer was that the decrees of the court rendered on August 24, 1920, November 30, 1920, and in March, 1921, be canceled and set aside.

The defendants filed separate demurrers to the complaint on the ground that it did not state a cause of action.

The court was of the opinion that the demurrers should be sustained. It was therefore decreed that said demurrers be sustained, and, the plaintiffs declining to plead further and electing to stand upon their complaint and the amendment thereto, said complaint and the amendment thereto be dismissed for want of equity. The plaintiffs duly prosecuted an appeal to this court. See *Lashbrook* v. *Tri-County Highway Improvement Dist.,* 152 Ark. 461.

In that case, in an opinion delivered on March 13, 1922, the decree of the chancery court was affirmed.

In a case note to 13 A. L. R. p. 1104, it is said that it is well settled that the judgment rendered upon sustaining a demurrer is equally conclusive by way of estoppel of the facts confessed by the demurrer as a

verdict finding the same facts would have been; and, accordingly, that, where the demurrer goes to the merits, a judgment sustaining it is a bar to a subsequent suit on the same cause of action. Numerous cases sustaining the text are cited from the Supreme Court of the United States and from the courts of last resort of the various States. Among the cases cited are the following from our own State: *Luttrell* v. *Reynolds,* 63 Ark. 254, and *Barrentine* v. *Henry Wrape Co.,* 113 Ark. 196.

The case of *Bissell* v. *Spring Valley Township,* 124 U. S. 225, contains a clear and comprehensive statement of the rule and the reason for it. Mr. Justice Field delivered the opinion of the court, and in discussing the question said: ''There are undoubtedly many cases where a final judgment upon a demurrer will not conclude as to a future action. The demurrer may go to the form of the action, to a defect of pleading, or to the jurisdiction of the court. In all such instances the judgment thereon will not preclude future litigation on the merits of the controversy in a court of competent jurisdiction upon proper pleadings. And it has been held that, where a demurrer goes both to defects of form and also to the merits, a judgment thereon, not designating between the two grounds, will be presumed to rest on the former. But where the demurrer is to a pleading setting forth distinctly specific facts touching the merits of the action of defense, and final judgment is rendered thereon, it would be difficult to find any reason in principle why the facts thus admitted should not be considered for all purposes as fully established as if found by a jury, or admitted in open court. If the party against whom a ruling is made on a demurrer wishes to avoid the effect of the demurrer as an admission of the facts in the pleading demurred to, he should seek to amend his pleading or answer, as the case may be. Leave for that purpose will seldom be refused by the court upon a statement that he can controvert the facts by evidence which he can produce. If he does not ask for such permission, the inference may justly be drawn that he is unable to produce

the evidence, and that the fact is as alleged in the pleading. Courts are not established to determine what the law might be upon possible facts, but to adjudge the rights of parties upon existing facts; and when their jurisdiction is invoked, parties will be presumed to represent in their pleadings the actual, and not supposable, facts touching the matters in controversy.''

In *Alley* v. *Nott,* 111 U. S. 472, Chief Justice Waite, speaking for the court, said: ''A demurrer to a complaint because it does not state facts sufficient to constitute a cause of action, is equivalent to a general demurrer to a declaration at common law, and raises an issue which, when tried, will finally dispose of the case as stated in the complaint, on its merits, unless leave to amend or plead over is granted. The trial of such an issue is the trial of the cause as a cause, and not the settlement of a mere matter of form in proceeding. There can be no other trial except at the discretion of the court, and, if final judgment is entered on the demurrer, it will be a final determination of the rights of the parties which can be pleaded in bar to any other suit for the same cause of action.''

This brings us to a consideration of the jurisdiction of the court over the subject-matter, and of the parties in the Kuykendall and Lashbrook suits referred to above. Kuykendall and other landowners attacked the legality of the proceedings of the road commissioners on various grounds, and finally the original commissioners resigned and others were appointed in their stead. The new commissioners revised the assessments, and passed a resolution abandoning the work because it would cost more than the amount of benefits assessed against the lands, and for various other reasons. Then a compromise was effected between the creditors, and the consent decrees of August 24, 1920, and of November 30, 1920, were the fruits of the compromise.

Under the first decree, the work was abandoned and the commissioners were directed to wind up the affairs of the district. They were directed to ascertain and

settle with the creditors of the district. The results of their settlement with the creditors were embodied in the decree of November 30, 1920. The power of the chancery court to wind up the affairs of the district and to adjust the claims against it has been held to be within the general jurisdiction of chancery courts over the enforcements of liens on real estate. *Bowman Eng. Co. v. Ark. Mo. High. Dist.,* 151 Ark. 47.

The precise issue was also determined in the case of *Lashbrook* v. *Tri-County Highway Improvement Dist.,* 152 Ark. 461, above cited. In that case the court held that, where property owners in a road improvement district brought suit in equity to enjoin the commissioners from proceeding with the contemplated improvements upon the ground that the cost of the improvements would exceed the benefits to the lands embraced within the district, and the court ordered the work stopped, it also had jurisdiction to wind up the affairs of the district and to adjudicate claims against the district. Hence it may be said that it has been judicially determined that the chancery court had jurisdiction in the Kuykendall and Lashbrook cases.

As we have already seen, the defendants in the Lashbrook case filed a demurrer on the ground that the complaint did not state a cause of action, and under such circumstances the trial of the issue raised by the demurrer involved the merits of the action, and the decree on the demurrer to the plaintiff's complaint was conclusive of everything necessarily determined by such decree.

In the Lashbrook case certain landowners were the plaintiffs and the commissioners of the district, and appellees herein were defendants. Under the pleadings in that case it is apparent that the taxpayers sought to contest the same matters that are in issue in the present case. That is, they sought to set aside the decree in the Kuykendall case providing for a dissolution of the road improvement district and the winding up of its affairs and a subsequent decree settling and adjusting the claims of numerous creditors, including the appellees in this case.

The record on appeal in this court may also be looked to to see whether the issues raised in the Lashbrook case are substantially the same as those raised in the present case. In discussing the question of the jurisdiction of the case and the power to adjust and settle the claims in the Lashbrook case, the court said: "We think, therefore, when appellants instituted suit in the chancery court to enjoin the commissioners from proceeding with the work upon alleged grounds within the jurisdiction of the court, and the court ordered the work stopped, as an incident thereto the court acquired jurisdiction to bring in creditors and adjudicate claims against the district. In the exercise of its power the court directed the commissioners, in the decree of August 24, 1920, to investigate and report all claims against the district to the court for approval. In the decree rendered on November 30, 1920, with all necessary parties, including appellants in the instant case, before the court, and after a full hearing, according to the recitals therein, the court allowed the claims sought to be contested in this case. The court having acquired jurisdiction of the parties and the subject-matter, the decree became final and binding upon all the parties thereto, and impervious to collateral attack by any of them, except for fraud in the procurement of same."

As we have already seen, the appellees and the commissioners and certain taxpayers were parties to that suit, and the court expressly said that the decree of November 30, 1920, became final and binding upon all the parties thereto and impervious to collateral attack by any of them, except for fraud in the procurement of the decree. Thus it will be seen that, if Lashbrook and the other plaintiffs in that case had filed the present suit, it would necessarily follow from the language of the court just quoted that the amount and validity of all the claims involved in the decree of November 30, 1920, were settled.

The bill of review in the present suit was filed by the commissioners and certain landowners. They were the representatives of the same class for whose benefit the

Lashbrook case was filed. The plaintiffs in the bill of review were represented by the plaintiffs in the Lashbrook suit, and therefore were bound by the decree therein entered. The remedy in suits of this character is in the interest of a class of individuals having common rights that need protection, and, in the pursuit of that remedy, individuals have the right to represent the class to which they belong. *Howard-Sevier Rd. Imp. Dist. No. 1* v. *Hunt,* 166 Ark. 62.

In this connection it may be stated that it is claimed that in any event the claim of Carter could not be settled by the decree of November 30, 1920, and in making the contention counsel for appellants rely upon the case of *Carter* v. *Bradley County Road Imp. Dists. 1 and 2,* 155 Ark. 288, where it was held that it was against public policy to make a contract with a State Highway Engineer as the engineer of a road improvement district, and in such case there could be no recovery on a *quantum meruit,* since the engineer could not establish his case without the aid of a contract prohibited by statute.

We do not think that case controls here. In the first place, it was proved in that case that Carter was highway engineer at the time the contract was made, and an appeal was taken from the decree of the chancery court adjudicating the matter. Here no appeal was taken from the decree of the chancery court allowing the claim, and under the decision in the Lashbrook case it could only be contested on the ground that it was procured by fraud. The decree allowing the claim of Carter in the chancery court was made before the decision of this court holding that such a contract was prohibited by statute. There is nothing in the record tending to show that the claim was procured by fraud or collusion between the commissioners and Carter. So far as the record discloses, they proceeded on the theory that Carter was entitled to recover, and there is nothing to impeach their integrity in making the settlement. Indeed, the holding that such contracts are prohibited by statute was made

by a divided court, and two of the judges filed a dissenting opinion.

Moreover, the decree of November 30, 1920, shows that it was heard on evidence, and it will be presumed on collateral attack that any evidence necessary to support the decree was introduced. In short, it may be that there was a new contract entered into with Carter or that his first contract was ratified by the commissioners after he resigned as State Highway Engineer, even if it should be said that the court should take judicial notice of the date of his resignation.

Under the authorities above cited and many others, a general demurrer admits the facts alleged in the complaint, and there is no good reason why final judgment or decree sustaining it should not be as conclusive of the same cause of action as if the plaintiff had proved these facts and a judgment or decree had been then rendered against him. His facts being admitted, he is not prejudiced by not being allowed to prove them. Cases should not be tried by piecemeal. If a plea of *res judicata* should not be sustained, when the issues are practically the same, the litigation would not end until the parties had no more money or the ingenuity of counsel in suggesting additional grounds in support of the issue had been exhausted. For the same reason the value of a plea of *res judicata* is not to be determined by the reasons which the court rendering the former decree gave for doing so. *Girardin* v. *Dean,* 49 Tex. 243; *Davis* v. *Talcott,* 12 N. Y. 184; *Hannon* v. *Auditor of Public Accounts* (Ill.) 5 Am. St. Rep. 502; *Southern Pac. Rd.* v. *United States,* 168 U. S. p. 1, and 34 C. J. p. 906. Hence it may be taken as settled that, in order to render a plea of *res judicata* available, it makes no difference whether the facts upon which the court proceeded in determining the merits were proved by evidence upon an issue joined, or were admitted by way of demurrer to a pleading stating the facts. The decrees in the Kuykendall case were not appealed from, and, so long as a decree remains unappealed

from and in full force, it does not detract from its effect as a bar to further suits upon the same cause of action that it may be erroneous, so as to be reversible on appeal, or so irregular that it would be vacated on a proper application for that purpose. 34 C. J., p. 769; *Jones* v. *Williams,* 31 Ark. 175; and *Wilson's Executor* v. *Dun,* 121 U. S. 525.

It can not be said that the bill of review should be sustained upon the ground that the decrees sought to be set aside are erroneous on their face. As we have already seen, the chancery court had jurisdiction to dissolve the district and wind up its affairs. The decree of November 30, 1920, settling the claims of appellees and other creditors, does not show error on its face. It expressly recites that it was heard on certain resolutions relating to the various claims of creditors, which are recited to have been taken up and acted upon by separate resolutions of the board of commissioners.

The decree also recites that the cause was heard upon the various contracts between the commissioners and the claimants, which are separately set forth. Hence it can in no sense be stated that there is error apparent upon the face of the decree.

This brings us to a consideration of the question of whether there was fraud in the procurement of the decree. It is apparent from the record that there was no collusion between the parties. The landowners became dissatisfied with the plans and assessments of benefits prepared by the original commissioners, and the final result was that the commissioners resigned and new ones were appointed in their stead. The new commissioners revised the assessment of benefits of the old commissioners and abandoned the contemplated improvement for several reasons, including the one that the contemplated improvement could not be made for the amount of benefits assessed against the lands. Then a compromise was effected by the commissioners with the various persons holding claims against the district. It appears that

these claims were separately examined and allowed in good faith.

Again it is sought in the bill of review to set aside the decrees on the ground that the settlements were secured by false testimony. False testimony is not enough to justify a bill of review. There is contradictory testimony given in most contested cases. The evil which would result from retrying such cases, even if the judgment was secured by false testimony, by reason of the endless nature of the strife, would be greater than any compensation arising from doing justice in individual cases. The same rule applies to newly discovered evidence. It must not have been known at the time of the trial, or at least could not have been known by the exercise of reasonable diligence. *Bank of Pine Bluff* v. *Levi,* 90 Ark. 166; *Smith* v. *Rucker,* 95 Ark. 517; *Long* v. *Long,* 104 Ark. 562; *McMurray* v. *McMurray,* 153 Ark. 365, and *Johnson* v. *Johnson,* 169 Ark. 1151. It is manifest that all the new evidence that has been secured might have been introduced in the first trial if reasonable diligence had been used.

Finally, it is contended that the decree of November 30, 1920, was entered in vacation, and for that reason it is not valid because it is an *ex parte* decree and not between adversary parties. We cannot agree with this contention. It is true that the style of the case is given as if it was an *ex parte* proceeding, but to allow this to control would be to put form above substance. It is apparent from the pleadings in the Kuykendall case that it was an adversary proceeding. Owing to the action of the landowners being hostile to the contemplated improvement, the original commissioners resigned, and new commissioners were appointed for the very purpose of winding up the district and settling the claims of the various creditors.

The decree of November 30, 1920, shows that the commissioners took up by separate resolutions the claims of each individual creditor and settled with him. The con-

tracts of the commissioners with the various creditors were referred to in the decree. All of the claims of the creditors except those of appellees have been paid. Thus it will be seen that the proceedings were adversary in character and were so regarded by the parties to the suit. This also follows from what was said upon the appeal in the Lashbrook case. The court expressly said that in the decree of November 30, 1920, all necessary parties, including the landowners, were before the court, and that the court allowed the claims sought to be contested in the case. Appellees, the commissioners of the district, and numerous landowners representing all the landowners as a class, were parties to the Lashbrook suit, and this court said that, the chancery court having acquired jurisdiction of the parties and of the subject matter, the decree became final and binding upon all the parties.

Thus it will be seen that the proceedings were adversary in character at all times, and the decree of November 30, 1920, although entered in vacation, is valid and binding because it was entered by consent of the parties in accordance with the provisions of the statute regulating the making and entry of decrees in chancery cases in vacation.

The chancellor properly refused to allow interest upon the amount of the claims of appellees. The reason given was that in the compromise above referred to it was provided that no interest should run upon these claims allowed by the commissioners, and in the decree of November 30, 1920, it was so provided. This decree not being set aside by appeal or otherwise, it was equally effective as an estoppel upon the question of interest, whether the decision was right or wrong, as it was upon the other issues decided in the decree and embraced within the issues of the petition filed in the proceeding when the decree was entered of record.

The result of our views is that the decision of the chancery court sustaining the plea of *res judicata* was

correct, and the decree of the chancery court must there-
fore be affirmed.

HART, J., (on rehearing). Counsel for appellants in
their motion on rehearing insist that the provisions of
the decree of the chancery court for a penalty are clearly
erroneous.

The Tri-County Highway Improvement District was
created by special act approved March 6, 1919. Road
Acts of 1919, vol. 1, p. 510. Section 26 provides for the
time of the payment of the taxes and how suits to collect
the same shall be conducted. Upon the failure of the land-
owners to pay the special taxes to the collectors, as pro-
vided in the act, the commissioners are empowered to
enforce the collection by chancery proceedings in the
county in which the land is situated, and the penalty for
the nonpayment of the taxes is provided in the section.

Thus it will be seen that the Legislature has deemed
it expedient or advisable for the speedy and certain col-
lection of the special assessments to enact a penalty to
provide against protracted delays. The penalty became
by operation of the statute a part and parcel of the taxes
due. We are not called upon to defend the terms of the
statute, either in whole or in part. It is sufficient to say
that, in accord with the general rule on the subject, this
court has held that the Legislature has the power to
impose a penalty for the nonpayment of taxes and to
authorize the penalty to be enforced with the taxes.
*Scott* v. *Watkins,* 22 Ark. 556; *Craig* v. *Flanagin,* 21 Ark.
319; *Thompson* v. *Sherill,* 51 Ark. 453; *Brasch* v. *Mumey,*
99 Ark. 324; and Cooley on Taxation, 3d ed., vol. 2, pp.
900 and 1030.

In this connection it may be stated that in *State* v.
*Norton,* 63 Minn. 497, it was held that penalties the same
as in the case of nonpayment of taxes levied for general
purposes, may be added in case of nonpayment of taxes
levied by a municipality for local improvements. Such
is the effect of our own decision in *Dickinson* v. *Cypress
Creek Drainage Dist.,* 139 Ark. 76.

But it is claimed that the provisions of § 26 do not apply to winding up proceedings where the road contemplated is not improved or constructed. We can not agree with this contention. Section 30 provides that, if for any reason the improvement shall not be made, all expenses and costs accrued to that time shall be charged against the real property in the district, and the amount necessary to discharge all such indebtedness shall be assessed, apportioned and paid in the manner herein provided. So it will be seen that the same method of procedure is provided for the collection of assessments in a proceeding to wind up the district where the improvement is not made as in case where the improvement is made under the provisions of the act.

Again it is insisted that such a holding is contrary to the rule laid down in *Federal Union Surety Co.* v. *Flemister,* 95 Ark. 389. The primary object of the suit in that case was to wind up the affairs of a fire insurance company on account of its insolvency, and a receiver was appointed to take charge of its assets. Certain policy-holders were allowed to intervene and to establish the amount of their fire losses. The policy-holders also sought to have taxed in their favor the attorneys' fees provided by the statute, and the court held that the policy-holders were not entitled to recover attorneys' fees where the policy-holders filed their claim in the insolvency proceedings, and could only claim the penalty and attorneys' fees provided by the statute where they brought suit directly against the company to establish their claims.

In the case at bar, as we have already seen, the penalty was expressly provided by the statute and was enforced in a direct proceeding under the statute to collect the unpaid taxes. It will be noted that the penalty for the nonpayment of taxes was enforced in the chancery court in the cases cited above. It was expressly held that the power to provide for a collection of the penalty with the taxes was so essentially necessary to meet the wants of the government that it could not be regarded as unreasonable or oppressive to the taxpayers.

It is next insisted that the court erred in holding that only the decree of the court could be looked to in determining whether the bill of review should be sustained. We did not mean that such a restricted meaning should be placed upon the language used on this phase of the case in our original opinion. Of course the pleadings as well as the decree itself may be looked to, and, when this was done in the present case, there was no error on the face of the record.

It was pointed out in our original opinion that the decree expressly recites that it was heard on certain resolutions relating to the various claims of creditors, and the decree was within the issues presented by the pleadings and the evidence. For this reason we hold that there was no error apparent upon the face of the record upon which to base the bill of review. The same may be said of the decree of August 24, 1920, as the one of November 30, 1920.

The result of our views is that the petition for a rehearing must be denied.