193 So.2d 321 (1966)
BRANDT GLASS CO., Inc.
v.
The NEW ORLEANS HOUSING MART, INC. and Israel Trestman.
No. 2376.
Court of Appeal of Louisiana, Fourth Circuit.
December 5, 1966.
Rehearing Denied January 9, 1967.
*322 Gerald J. Gallinghouse, New Orleans, for plaintiff-appellee.
Milton E. Brener and Herbert J. Garon, New Orleans, for defendants-appellants.
Before McBRIDGE, HALL and BARNETTE, JJ.
HALL, Judge.
On October 18, 1963 plaintiff brought this mandamus proceeding against The New Orleans Housing Mart, Inc., a Louisiana corporation, having its registered office and principal place of business in New Orleans, and Israel Trestman, its president, seeking to compel the defendant corporation and its management to permit plaintiff through its attorneys and other agents to examine and make copies of the defendant corporation's books and records. Plaintiff alleged that it was the holder and owner of record of more than two per cent of all the outstanding shares of the defendant corporation, that it had held such shares for more than six months and consequently had the legal right under the provisions of LSA-R.S. 12:38 to make such examination; notwithstanding which the defendant corporation through its management had refused plaintiff access to its books. The Trial Court issued an alternative writ of mandamus returnable on November 8, 1963. The return date was extended several times and subsequently was continued indefinitely.
On May 10, 1966 defendants filed an answer to plaintiff's petition and trial thereon was held on May 13, 1966.
During the long delay between the filing of the petition and the filing of the answer, the attorneys for the parties endeavored to dispose of the matter amicably. They succeeded to the extent that plaintiff was permitted to conduct a visual examination of all of the books and records of the defendant corporation and to make photographic copies of almost all of the records which plaintiff desired to copy. Some of the records were examined by plaintiff's attorneys and agents at the office of the defendant corporation and some of them were made available to them for examination at the office of defendants' attorney.
Some of the photographic copies were made by plaintiff's attorney on the Xerox machine in his own office, the records being made available there by the defendants pursuant to his written request dated April 13, 1966. On May 3, 1966 plaintiff's attorney addressed another letter to defendants' attorney requesting that additional records be brought to his office for photographing. In reply defendants' attorney stated that he thought it best that any further inspection of the defendant corporation's records be made under the supervision of the Court. Thus denying the request, and enclosed with his reply a copy of an answer to plaintiff's mandamus petition which he had prepared for filing.
As of the time defendants' answer was filed (May 10, 1966) plaintiff had completed its visual examination of all of the defendant *323 corporation's books and records, and had made photographic copies of all the records which it desired to copy with the exception of those records listed in the request of May 3, 1966, comprising eleven (11) described categories of records not necessary to detail here.
Following trial of the case judgment was rendered on May 13, 1966 in plaintiff's favor making the alternative writ of mandamus peremptory to the extent of ordering defendants to deliver to the office of Gerald J. Gallinghouse, as plaintiff's duly authorized attorney and agent the eleven (11) described categories of records for copying on his office Xerox machine at plaintiff's expense. The judgment directed the records to be delivered to Mr. Gallinghouse's office at 9 o'clock A.M. on Wednesday, May 18, 1966, and directed that the copying thereof be commenced immediately upon delivery of the records and continued diligently until all copying shall have been completed except for a one hour recess from noon to 1 P.M. The judgment further authorized defendants to have a representative present at the copying, and ordered that the records be returned to defendants intact immediately upon completion of the work. From this judgment defendants prosecute this suspensive appeal.
Defendants concede that plaintiff is entitled under the provisions of LSA-R.S. 12:38 to examine the defendant corporation's books and records and to make photographic copies of the same. The sole issue raised by defendants is as to the place of examination or photographing. They pose the question in their brief as follows:
"The issue in this case is very narrow, simple and well defined:
"Can a corporation lawfully be required to deliver its books and records into the possession of a minority shareholder for copying?"
Defendants contend that the inspection of corporate records should be made at the place where the books are ordinarily kept, that is, at the office of the corporation; and that a court is without legal authority to compel their delivery to a shareholder for inspection or copying elsewhere.
Sub-section (A) of LSA-R.S. 12:38 requires every domestic corporation to keep at its registered office "books and accounts showing the amounts of its assets and liabilities, receipts and disbursements, and gains and losses." Sub-section (B) requires certain other records to be kept at its registered office. Subsection (C) provides criminal penalties for violation of the foregoing provisions, and Sub-section (E) provides that a shareholder who has been the holder of at least 2% of all outstanding shares of the corporation for at least six months "* * * shall have the right to examine, in person or by agent or attorney, at any reasonable time, for any proper and reasonable purpose, any and all of the books and records of the corporation, and to make extracts therefrom * * *." The statute does not provide where the examination shall take place but it may be inferred that the examination should, ordinarily at least, take place where the books are required by law to be kept. However there is no provision in the law requiring that the examination take place at the registered office of the corporation. In the absence of such a requirement, is a court deprived of all discretion in the matter of fixing the place of inspection?
The particular point involved, insofar as we have been able to find, has never been passed upon by any of our appellate courts. Mullens v. Pioneer Gas Co., La. App., 154 So. 377; Finance Co. of America at Baltimore v. Brock, 80 F.2d 713 [5th Circuit) and Sumner v. J. S. Williams & Son, Inc., La.App., 26 So.2d 771, do not pass squarely on the point although the Federal Court in the Brock case stated in general terms that it is well settled in Louisiana that stockholders have the right "at reasonable times and places" to examine the records and books of a domestic corporation.
*324 Neither do we find that the particular point involved has ever been passed upon elsewhere. Defendants cite G. W. Jones Lumber Company et al. v. Wisarkana Lumber Company, 125 Ark. 65, 187 S.W. 1068 and Wyman v. Sombrerete Mining Company, 32 Misc.2d 276, 222 N.Y.S.2d 996, but a careful reading of those cases shows that they do not negative the discretion of the courts to direct an examination of corporate books and records elsewhere than at the office of the corporation.
We quote the following from Fletcher's Cyclopedia of Corporations (1952) Vol. 5, § 2243, p. 849:
"As shown elsewhere, the place of custody of the corporate books and records is ordinarily within the state of incorporation, at the place where is located the principal business office of the corporation, and ordinarily this localizes the place for inspection at that place, although it is not unusual for the statute to so provide, either by implication or in express terms." (Emphasis supplied.)
In 18 C.J.S. Corporations § 508, p. 1185 it is said:
"The inspection should be made at the place where the books are ordinarily kept, that is, the office of the company. However, some statutes give the stockholders an absolute right to examine the corporation's books at its legal principal place of business, while others authorize them to make their inspection at a reasonable or proper place, the determination of which is left to the discretion of courts enforcing the right."
We find the following statement in 18 Am.Jur.2d, § 198, p. 725:
"The courts generally, both in jurisdictions recognizing the right of inspection of corporate books and records by a stockholder as guaranteed to him by the common law and in those jurisdictions which have statutes relative to the situation, hold that the right is limited to inspection at proper places. In enforcing the common law right of inspection the court may impose reasonable limits as to the place of examination.

"As a general rule, inspection should be made at the place where the corporate records are ordinarily kept, which is usually at the principal office or place of business of the corporation * * *." (Emphasis supplied.)
We have examined the cases cited in the notes to the above quoted texts and find that none of them hold as a matter of law that the inspection must take place at the corporate office. A Florida case cited by Fletcher (Rahn v. State ex rel. Weir, 137 Fla. 692, 188 So. 584) states:
"We conclude, also, that the time within which the inspection should be made ought to be designated by the court. The statute providing that the custodian of records shall keep them in his possession at all times during business hours for exhibition, there seems to be no need, in the absence of unusual circumstances, to name the place of inspection, as the place of business of the corporation is undoubtedly meant."
Our corporation statute being silent on the place of inspection, it is our opinion that the place of inspection is not restricted as a matter of law to the offices of the corporation, but that a Trial Court has discretion to order it held elsewhere just as it has discretion to fix the time of inspection and other incidentals connected therewith. But for many obvious reasons the inspection should ordinarily be ordered to be held at the place where the records are kept, that is, at the registered or principal office of the corporation, and ordinarily it would amount to an abuse of discretion to order the inspection held elsewhere. Our remarks are confined to domestic corporations having their principal offices within the territorial jurisdiction of the Court.
*325 Being of the opinion that a Trial Court has discretion to order the inspection made at a place other than the corporate office, the question presented resolves itself into whether the Trial Court in this case has abused his discretion.
We have here a small corporation with very few stockholders. We are told that the president owns 95% of the outstanding stock. Defendants have made no showing that the business of the corporation is such that its records are constantly in use at its office. There is no showing that there is any danger that a temporary removal of the records from the corporate office will jeopardize the right of inspection by other stockholders. As a matter of fact the record shows that between the time suit was filed and the date of the trial the books had at least on two occasions been removed from the corporate office to the office of defendants' attorney where they were made available for plaintiff's inspection. On one of these occasions the records remained in the attorney's office for a period of approximately fifteen months, on the other occasion they were kept there for six weeks. There is no showing that the Court's order to deliver certain described records to the office of plaintiff's attorney for photographing will seriously inconvenience the corporation or its management. In the course of argument before this Court counsel stipulated that all of the records covered by the Court Order could be contained in a box 3' × 3' × 3' and carried in one man's arms. As a matter of fact the procedure outlined in the Court's Order follows closely the procedure established by agreement between the parties under which plaintiff obtained copies of certain corporate records in April 1966.
On the other hand plaintiff has shown that there is a Xerox machine in Mr. Gallinghouse's office upon which the photographic copies can be made cheaply and expeditiously; that the only facility for copying records at the corporate office is a Verifax machine which is admitted to be both slow and cumbersome. Defendants' offer of the use of this machine "on the payment of a nominal charge therefor" would probably open the door to further controversies between the parties. The only other alternative would be for plaintiff either to have the copying done by a commercial concern at considerable expense or to move his office Xerox machine to the corporate office, a procedure entailing some difficulty.
Why defendants now insist that the photographing be done at the corporate office rather than at the place agreed upon for the copying which was done in April 1966 is not explained in the record.
The Trial Judge rendered his order after weighing all of the equities between the parties and we find no abuse of discretion on his part in rendering the judgment appealed from.
Needless to say what is reasonable and proper necessarily depends on the circumstances of each case and our opinion is confined to the facts of this case.
For the foregoing reasons the judgment appealed from is amended so as to change the date of delivery of the records to the office of Mr. Gerald J. Gallinghouse from 9 o'clock A.M. on Wednesday, May 16, 1966 to 9 o'clock A.M. on the first Monday, not a legal holiday, following the date the judgment herein becomes final. As so amended and in all other respects the judgment appealed from is affirmed; costs of both Courts to be borne by defendants-appellants.
Amended in part and affirmed.